UNITED STATES, Appellee

v

TYRONE W. KING, Airman Basic, U. S. Air Force, Appellant

12 USCMA 71, 30 CMR 71

No. 14,353

Decided December 16, 1960

*Colonel James L. Kilgore* and *Lieutenant Colonel Peter Portrum* were on the brief for Appellant, Accused.

*Lieutenant Colonel Merlin W. Baker, Lieutenant Colonel Simpson M. Woolf,* and *Major James Taylor, Jr.,* were on the brief for Appellee, United States.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused entered a plea of guilty to absence without leave for a period of twenty-eight days. The Government introduced evidence showing two prior convictions, and the special court-martial returned a sentence of a bad-conduct discharge, confinement at hard labor for four months, and partial forfeitures for a like period. Intermediate appellate authorities affirmed the findings and sentence, and thereafter we granted accused's petition for review. The questions with which we are concerned involve the expression of an opinion by a court member after findings and the untimely comments by trial counsel in

his final argument. We will dispose of them in the order stated.

The Government concedes that the questioned member of the court acted in an inappropriate manner but argues that his expression of opinion in open court was not grave enough to prejudice the substantial rights of the accused. The incident giving rise to the assertion of error arose in the following fashion. After findings of guilty had been returned, defense counsel elected to make an unsworn statement in behalf of the accused. Thereafter, the court was closed to deliberate on sentence but immediately reopened, and the president announced that a member had certain

questions to direct to counsel. The first inquiries were addressed to the defense and they requested information concerning the accused's accrued leave and his activities while in an absentee status. A colloquy ensued between the president and counsel, and in the course of the discussion trial counsel advised the court that the defense could consider the request but the accused had a right to remain silent. The president immediately questioned the propriety of the proceedings, and the member then stated, "We were always given the right to ask a question and as far as I am concerned if he had a good answer, fine, and if he wants to remain silent it means something to me." No one corrected the member's belief on the law or challenged his right to remain on the court, but defense counsel answered the first portion of the question. However, the additional requested information was not furnished.

A fair interpretation of the comment by the member shows that not only did he misunderstand and misstate the law, but that he was posing a threat if the accused elected to remain silent. Paragraph 75c (2) of the Manual for Courts-Martial, United States, 1951, provides that an accused may himself or by counsel make an unsworn statement. If he elects to follow this course, cross-examination is not permitted and court members are not allowed to interrogate him on the substance of the statement. Accordingly, the member of the court placed the accused in a legal dilemma of yielding a substantial right or suffering consequences if he relied thereon. At no time during the course of the proceedings was the member correctly informed on the appropriate principle of law. Neither was he advised that he could not draw unfavorable inferences from accused's silence. True it is, as argued by appellate Government counsel, that the member could have been subject to challenge for cause. But he was permitted to participate in the deliberations on sentence, and in the absence of cautionary instructions we have no way of ascertaining the impact his comments may have had on other members of the court. And also important is the fact that there is a fair risk that the member's mental attitude of hostility toward the accused because of the latter's failure to furnish the requested information influenced his consideration of the appropriateness of sentence.

The second error arose out of trial counsel's argument to the court. In this connection, it is to be remembered that in a special court-martial proceeding, trial counsel is at times requested to aid the president of the court in determining the law, and his statements, if unquestioned by the defense, are accepted as stating correct legal principles. Accordingly, he should carefully limit his arguments to evidence in the record, to fair inferences therefrom, and matters relevant to the appropriateness of punishment. Here, he commenced his arguments on sentence with the following statement:

"As far as aggravation is concerned I am finishing about six years of the service as being trial and defense counsel before military courts. I started out my career with seven good cases at Lackland with seven good boys who came before a military court charged with AWOL. These are AWOLs which ranged from four days up to about fourteen days and I hate to say it but as defense counsel they were each rapped with BCDs, six, and six."

Taken in context, it is clear the prosecutor sought to convince the court-martial members that sentences in other cases could be considered as an aggravating factor in the case at bar. The suggested yardstick was clearly inappropriate, for the facts of those cases were unknown to the court and no one would suggest that the accused should be measured by another person's criminal conduct. As we interpret the law, generally speaking, facts in aggravation should be concerned with heinous circumstances surround-

73

ing the offense and the character of the accused if it is placed in issue. Sentences imposed on other persons involving different facts do not add to the seriousness of the crime committed, nor do they aid the court in fitting the punishment to the person on trial. As we stated in United States v Mamaluy, 10 USCMA 102, 106, 27 CMR 176, "accused persons are not robots to be sentenced by fixed formulae but rather they are offenders who should be given individualized consideration on punishment." Surely trial counsel's argument was inappropriate and may well have caused the court members to believe that uniformity in punishment required the imposition of a punitive discharge.

The Government argues that accused should not be heard to complain at the appellate level because defense counsel failed to object. Normally errors arising out of in-court incidents may be waived, but in the instant case we are not disposed to invoke that doctrine. While both counsel were certified lawyers, in a special court-martial there is no legally trained law officer to guide the proceedings and the members ofttimes treat trial counsel as the oracle of law. One of the errors finds its source in his own misstatements. Certainly defense counsel, particularly when certified as lawyers, have the duty to raise objections to any errors which prejudice their client, and failure on their part to do so normally should bar consideration of the mistake on appeal. However, in the instant case, the errors were of such nature that we believe a miscarriage of justice might result if the accused was not permitted to have his sentence determined by a court uninfluenced by error of the magnitude of those reflected by this record.

The above discussed matters do not affect the validity of the accused's conviction for unauthorized absence, to which he pleaded guilty. However, for the foregoing reasons, we reverse the sentence and return the record to The Judge Advocate General of the Air Force. A rehearing on sentence may be ordered.

Chief Judge QUINN and Judge FERGUSON concur.