UNITED STATES, Appellee

v

JOHN W. SEAY, JR., Private, U. S. Army, Appellant

13 USCMA 540, 33 CMR 72

No. 15,936

March 22, 1963

*Captain Daniel H. Benson* argued the cause for Appellant, Accused. With him on the brief were *Captain Richard A. Baenen* and *Captain Thomas Stapleton.*

*Captain Peter J. McGinn* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Francis M. Cooper* and *Captain Alvin B. Fox.*

## Opinion of the Court

KILDAY, Judge:

Appellant was tried by general court-martial convened at Fort Wainwright, Alaska, on one specification of robbery and two specifications of assault with intent to murder, in violation of Articles 122 and 134 of the Uniform Code of Military Justice, 10 USC §§ 922 and 934, respectively. He pleaded not guilty to all charges and specifications. He was found guilty of the robbery specification as charged; guilty of the lesser included offense of assault with a dangerous weapon under one of the specifications alleging assault with intent to murder; and, not guilty of the other specification of assault with intent to murder.

The law officer correctly informed the court-martial that the maximum punishment authorized for the offenses of which the accused had been found guilty was a dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for ten years, and reduction to the lowest enlisted grade. The court-martial fixed his sentence at dishonorable discharge, total forfeitures, confinement at hard labor for five years, and reduction to the lowest enlisted grade. The convening authority approved the findings and sentence. A board of review in the office of The Judge Advocate General of the Army affirmed the findings and approved only so much of the sentence as provided for dishonorable discharge, total forfeitures, confinement at hard labor for three years, and reduction to the grade of Private E–1.[1]

This Court granted review on the following alleged error assigned by the appellant in his petition:

"THE LAW OFFICER ABUSED HIS DISCRETION IN FAILING TO GRANT A DEFENSE MOTION FOR MISTRIAL."

In view of the assignment granted, it will not be necessary to detail the facts. It is sufficient to note that there was ample evidence before the court-martial to support the findings.

The appellant did not take the stand in his own behalf at the trial. Subsequent to the presentation of evidence, and after argument by respective counsel, but before the instructions of the law officer to the court-martial, a member of the court, through trial counsel, submitted the following question, in writing, to the law officer:

"What about testimony by the accused? Why is he not permitted the opportunity to testify in his own behalf? Maj. Porter."

The only response made by the law officer was as follows:

"I will mark the piece of paper handed to me from Major Porter through the trial counsel as Appellate Exhibit 9. I'll only comment that the matter has been taken care of. The court is in recess."

The record reveals that at an earlier out-of-court hearing, the law officer propounded the following questions to the defense counsel and received the following replies:

"LO At this time I would like to inquire of defense counsel if the accused fully understands his rights to present evidence, to testify himself, or to remain silent, both on the merits of the case and in extenuation and mitigation.

"DC He has been informed of his rights, yes, sir.

---

[1] The record reveals that the Department of the Army has taken action to suspend the unexecuted portion of his sentence, effective upon completion of a period of training; and to then restore him to duty to complete his term of service under his current enlistment.

"LO Now, could the defense give me some indication as to how much testimony you will present on the merits of the case?

"DC I will have two witnesses, sir, and possibly the accused will testify. The testimony of the two witnesses will take approximately fifteen minutes each."

However, as previously noted, the accused did not testify.

Immediately after the law officer, in the presence of the court-martial, had made the statement above-quoted: "I'll only comment that the matter has been taken care of," an out-of-court hearing was held. At that hearing the law officer referred to Appellate Exhibit 9 and the reply he had made in the presence of the court-martial and inquired, "Does the defense counsel desire anything further in this regard?" to which the defense counsel responded, "Nothing further in this regard, sir." The law officer then propounded the following question:

"Do you wish an opportunity to say anything further to the court in regard to the matter?

"DC No, sir."

The law officer then referred to his previous inquiry as to whether the accused fully understood his rights with respect to being a witness and inquired if defense counsel's assurance that he did was still correct, and defense counsel replied in the affirmative. Thereupon the out-of-court hearing ended.

In a very few minutes another out-of-court hearing was convened and defense counsel informed the law officer that, in the light of the question asked by the court member, "it appears to me that a motion for mistrial is in order, and I so move on the basis that the question is inherently prejudicial to the accused." Thereupon the following colloquy occurred between the law officer and defense counsel:

"LO Do you wish to further amplify your argument?

"DC Nothing much further, sir, except to say that the nature of the question indicates to me that this person automatically holds it against the accused if he does not testify.

"LO Would you desire an instruction along that line, no inferences to be drawn from the accused's silence?

"DC Sir, I feel the instruction would not correct the error but would just point up to the other members of the court more emphatically that the accused has not taken the stand.

"LO I am going to deny your motion; however, I will give such an instruction if you wish it. However, I gather from your previous comment that you would oppose such an instruction, am I correct in my assumption?

"DC That is correct.

"LO You do not want it?

"DC No, sir.

"LO Very well, I won't give it. Anything further?

"DC Nothing further."

The court-martial thereupon reconvened and the law officer proceeded to instruct the court on findings.

Title 18, United States Code, section 3481, reads as follows:

"In trial of all persons charged with the commission of offenses against the United States and in all proceedings in courts martial and courts of inquiry in any State, District, Possession or Territory, the person charged shall, at his own request, be a competent witness. His failure to make such request shall not create any presumption against him."

This provision, with no difference in substance, was originally adopted as the Act of Congress of March 16, 1878, 20 Stat 30.

In Wilson v United States, 149 US 60, 37 L ed 650, 13 S Ct 765 (1893), Mr. Justice Field stated:

"The Act of Congress permitting the defendant in a criminal action to appear as a witness in his own behalf upon his request declares, as it will be seen, that his failure to request to be a witness in the case *shall not create any presumption against him.*

"To prevent such presumption being created, comment, especially hostile comment, upon such failure must necessarily be excluded from the jury. The minds of the jurors can only remain unaffected from this circumstance by excluding all reference to it."

Justice Field further stated, at 149 US 67:

". . . By this action of the court in refusing to condemn the language of the district attorney, and to express to the jury in emphatic terms that they should not attach to the failure any importance whatever as a presumption against the defendant, the impression was left on the minds of the jury that if he were an innocent man he would have gone on the stand as the district attorney stated he himself would have done."

The Justice concluded his opinion with the following paragraph:

"This view of the effect of the objections taken to the course of the district attorney, and to the failure of the court to properly condemn it, renders it unnecessary to consider any other alleged errors."

It appears that comment by the prosecuting attorney on the failure of an accused to testify is improper. It seems equally clear that an instruction by the court may serve to eliminate any prejudice therefrom. Such is the strong implication of Wilson v United States, supra. The same has been the express holding of Federal courts. In United States v Di Carlo, 64 F2d 15 (CA 2d Cir) (1933); Circuit Judge Augustus N. Hand stated:

"During summation, the prosecuting counsel remarked: 'The defendant has not taken the stand.' . . . The comment was, however, clearly improper, and is to be deprecated, but in the charge the court told the jury that the defendant had a right to take the stand or not as he willed, and added: 'The fact that he did not take the stand is not to create any presumption against him.' . . .

". . . We should be blind to realities if we supposed that juries are unconscious of the omission of a defendant to take the stand, and we think the express instruction to the jury in this case, that this fact must not prejudice the defendant, did all that could ever be done to prevent the consideration by them of the omission in arriving at their verdict."

In Bruno v United States, 308 US 287, 84 L ed 257, 60 S Ct 198 (1939), the Supreme Court of the United States held it to be error to fail to charge the jury as to section 3481 of Title 18, United States Code, supra, when requested by the defendant. In Chadwick v United States, 117 F2d 902 (CA 5th Cir) (1941), it was held not to be error for the court to give the instruction on its own motion.

In Salibo v United States, 46 F2d 790 (CA 5th Cir) (1931), the court said:

"An assignment of error sets up that the jury, after retiring to deliberate, discussed and gave effect to the failure of appellant to take the stand in his own defense. A defendant has the right to take the stand in his own defense or to not do so. In the latter case it would be error for the district attorney or the court to comment upon or call the jury's attention in any way to his failure to testify, but we know of no rule of law that would prevent the jury from discussing that circumstance in their deliberations the same as any other fact made apparent in the course of the trial, and their doing so would not constitute error."

Article 710, Vernon's Annotated Code of Criminal Procedure of the State of Texas, 1941, is very similar to 18 USC § 3481, supra, and contains the following language: "the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause." While earlier cases in Texas seemed to follow the interpretation that any reference by the jury to the defendant's failure to testify constituted reversible misconduct, in Wilson v State, 129 Texas Crim

180, 86 SW2d 220 (1935), the following was stated:

"It has been held many times that the record must show that the failure of the defendant to testify was taken as a circumstance against him. This is the language of the statute. A mere allusion to that fact would not call for the granting of a new trial or a reversal by this court. . . . The question on appeal is whether the facts made evident that the appellant's failure to testify was taken by the jury as a circumstance against him."

See also Low v State, 156 Texas Crim 34, 238 SW2d 769 (1951) ; De La Rosa v State, 167 Texas Crim 28, 317 SW2d 544 (1958).

This Court has given consideration to the question of the right of the accused to remain silent at various stages of the proceedings against him. United States v Brooks, 12 USCMA 423, 31 CMR 9, and other cases therein cited; United States v Hickman, 10 USCMA 568, 28 CMR 134. Our position on proof or comment by the prosecution as to the accused's exercise of his right to remain silent is clear. In the language of Judge Hand, supra, such comments are clearly improper and are indeed to be deprecated. Clearly, prejudicial error may thereby be committed, and surely prosecuting attorney would never deliberately and maliciously parade such a fact before the triers of fact.

In United States v King, 12 USCMA 71, 30 CMR 71, as in the case before us, a court member was involved. However, the opinion in that case indicates the court member stated, in part, "as far as I am concerned if he had a good answer, fine, and if he wants to remain silent it means something to me." It is readily evident the court member was using the accused's silence as a presumption against the accused. And, as Judge Latimer pointed out, the court member was posing a threat if the accused elected to remain silent. There "the member's mental attitude of hostility toward the accused" was evident.

**544**

The case presently at bar is far different. Turning to the incident as it happened at the time of █ this trial, we note the question was asked in writing and there is nothing to indicate that any member of the court-martial, other than the author of the note, had any information as to its content. Incidentally, the record reflects that eight other written questions were handed to trial counsel and the law officer by members of the court-martial during the course of the trial. There is no intimation in the record that the court-martial in anywise regarded the failure of the accused to testify as a presumption against him.

Appellant contends that the question asked by the court member is an explicit demonstration that one member of the court, if not more, was drawing an illegal inference from the failure of the accused to take the stand. We are unable to form such a conclusion from the content of the question, or the setting in which it transpired.

First, it must be borne in mind that the court member was an officer of the Army with sufficient military service to have reached the rank of major. We can hardly assume total ignorance of proceedings by courts-martial of one of such rank and experience. The language of the question is in direct accord with the question generally propounded to the accused or his counsel as to accused's knowledge of his right to testify or remain silent. Obviously the law officer so construed it, as his reply was "I'll only comment that the matter has been taken care of." As we have earlier noted, the matter had been taken care of in an out-of-court hearing, and the opportunity had been given the accused to testify through the inquiry to defense counsel as to whether accused had been advised of his rights in that regard.

We find in the question no more than an expression of concern that compliance be had with court-martial procedures and solicitude for the rights of the accused, "Why is he not permitted the opportunity to testify in his own behalf?"

The court member evinced no hostility whatever to accused. Cf. United States v King, supra. Moreover, the law officer expressed his willingness to instruct the court that no inference or presumption should be drawn from the failure of the accused to testify. He did not do so only because of the objection thereto by defense counsel. The appellant is not now in a position to claim prejudice because of the course followed by the law officer. Nor do we believe defense counsel could, under the circumstances of the instant case, insist upon a "mistrial or nothing." The Federal cases herein cited establish the propriety of an instruction to the jury in accordance with 18 USC § 3481, and the efficacy of such instruction under such circumstances. Further, it must be noted that such an instruction could have been given at the time of and along with the other instructions of the law officer and without undue prominence.

The appellant relies heavily on Stewart v United States, 366 US 1, 6 L ed 2d 84, 81 S Ct 941 (1961). In that case the Supreme Court reversed a murder conviction with a death penalty because of the action of the prosecuting attorney, in cross-examination of the defendant, disclosing defendant's failure to take the stand in two previous trials which resulted in convictions. There the defense made no request for cautioning instructions but moved for a mistrial.

We believe that capital case to be distinguishable from the present one on several grounds. Among other items, the comment was there made by the prosecuting attorney. See Salibo v United States, supra. That is not true here. In Stewart the comment was hostile and damaging, whereas in this instance the court member's inquiry was paternalistic in nature. Also, it is to be noted the prosecutor's comment in Stewart was before all of the members of the jury. The member's query in the present case was not so communicated, and in fact the defense expressly requested that the law officer not make it known to the other triers of fact by giving a cautionary instruction.

In short, the circumstances require a different result. The hostile comment by a prosecutor before the jury, which has major impact upon the only defense offered by one accused of a capital offense, is hardly to be equated to a solicitous written inquiry of the nature here involved, made by one court member and uncommunicated to others save those charged with protecting accused's rights.

We are unable to find anything in this record to indicate prejudice to the appellant by reason of this incident. This is especially true in that while the court-martial convicted appellant of the offense of robbery as charged, it only found him guilty of the lesser included offense of assault with a dangerous weapon rather than assault with intent to murder as charged, and acquitted him of the other specification of assault to murder. It is also to be noted that the sentence imposed by the court-martial included confinement for one half the maximum for the offenses of which convicted.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.