UNITED STATES, Appellee

v

HOWARD GORDON, Private, U. S. Army, Appellant

14 USCMA 314, 34 CMR 94

No. 16,883

December 20, 1963

██ 

*Cecil B. Moore, Esquire,* and *First Lieutenant J. Philip Johnson* argued the cause for Appellant, Accused. With them on the brief were *Colonel Joseph L. Chalk, Lieutenant Colonel Ralph W. Wofford* and *Captain Charles W. Schiesser.*

*Captain Peter J. McGinn* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Francis M. Cooper* and *Captain Joel Robinson.*

## Opinion of the Court

KILDAY, Judge:

Shortly after midnight, on May 6, 1962, accused was present in a room of a small, rather seedy and nondescript, hotel in downtown Seoul, Korea. In the course of events that transpired there, he stabbed and killed one Korean national, and cut another with a switchblade knife. He was subsequently arraigned and tried before a general court-martial for unpremeditated murder and assault with a dangerous weapon, in violation of Articles 118 and 128, Uniform Code of Military Justice, 10 USC §§ 918 and 928, respectively. Accused pleaded not guilty, but was convicted as charged and sentenced to dishonorable discharge, total forfeitures, confinement at hard labor for ten years, and reduction to the lowest enlisted grade. The convening authority reduced the period of confinement to five years, but otherwise approved the findings and sentence, and a board of review in the office of The Judge Advocate General of the Army thereafter affirmed.

Accused petitioned this Court for grant of review pursuant to Article 67(b)(3), Uniform Code of Military Justice, 10 USC § 867, and we allowed his appeal to hear arguments on the following three issues:

Whether accused was prejudiced by improper comment upon his failure to testify, by trial counsel's closing argument.

Whether the law officer erroneously instructed the court-martial on the issue of self-defense relative to the offense of murder.

Whether the law officer erred in denying the defense request for an instruction on self-defense as to the aggravated assault specification.

The record reflects that just before midnight, on May 5, 1962, accused and a Korean, Yi Chang Sik, entered the hotel. Kim Po Yong, an admitted procurer and a friend of Yi's, saw them enter. Kim and a companion, both of whom were also Koreans, decided to follow the first mentioned pair. While in the hallway of the hotel Kim and his companion, along with others present, heard a scream from the room in which accused and Yi were. Kim rushed to the room and, as he slid the door open, was stabbed in the chest by accused, who was fleeing. Accused ran through the hotel lobby with a knife in his hand and, being unable to locate his own boots—which he had removed in accordance with oriental custom—took a pair of Korean shoes and fled from the hotel.

Yi was found lying in the hotel

room bleeding from five stab wounds, from which he died very shortly. Kim received a cut several inches long under his left arm.

A written pretrial statement, made by accused under oath and after appropriate warning and opportunity to consult with counsel, was also introduced into evidence. According to this statement, accused was lured into the hotel by Yi, who was a procurer. Despite accused's protests that he had no money, Yi insisted that they go into the hotel room. There Yi expressed disbelief that accused was without funds, but suggested that accused give him his watch. When accused demurred and said he was leaving, Yi restrained him, opened the door, and inquired whether accused was aware of his friends outside. After accused saw the two Korean men outside the room, Yi slid the door closed and again demanded accused's watch. Accused again refused, whereupon Yi took off his jacket and, pushing accused away from the door, stated his intention to search him.

Accused asserted in his statement that he started for the door, but Yi grabbed him and a struggle began. Accused was unable to shake Yi off and when the latter turned toward the door and hollered in Korean, accused believed his assailant was calling for his friends. Being fearful he would be beaten and robbed, hearing footsteps approaching down the hallway, and being unable to get away, accused drew his switchblade knife from his pocket.[1] He stabbed Yi until the latter released him, then started to leave. As accused reached the door it was opened by one of the Koreans he had seen in the hallway. Accused swung at him with the hand in which he held the knife, and ran out of the room. The third Korean made no move against accused, so the latter fled without further incident in a pair of Korean shoes he picked up near the doorway to the hotel.

The evidence also shows that ac-

cused's character and reputation were good. He was of small stature and had been suffering for several months from a hernia condition. For that reason he was, at the time of the alleged offenses, medically excused from all but light duty.

Further, the testimony, together with pictures and diagrams of the hotel floor plan which were admitted in evidence at trial, indicates that the room in which the stabbings took place could be reached only by a circuitous route and was of very small dimensions. The hallway immediately outside the room consisted of an elevated wooden walkway only two feet three inches in width, and the doorway into the room was but five and one half feet high and two feet across.

While the facts recounted above do not constitute a full recitation of the evidence, they suffice to place the issues in perspective.

## I

We turn our attention first to the contention that prejudicial error was committed by trial counsel in his closing argument. The accused did not take the witness stand and it is asserted by appellate defense counsel that two statements made by the prosecution constitute improper comment upon his failure to testify in his own behalf. The following are the two remarks made by trial counsel in the course of a lengthy development of the Government's position, and here assailed by the defense:

"Now, what happened in room number 7? We can't be sure exactly what happened in room number 7. Only Yi and the accused know, and Yi isn't here to tell his side of the story."

He went on to enumerate several items that were known, from which incriminating inferences could be drawn. Three pages previously in the record, trial counsel, observing "there is, of course, no direct testimony on this,"

---

[1] We are not unaware of the inconsistency in a previous statement volunteered by accused, in which he asserted he had wrested this knife from Korean "slicky boys" who attacked him, occasioning loss of his hat, money, and boots.

had made substantially the same remark quoted above.

It is a basic cornerstone in our system of jurisprudence that an accused must be presumed to be innocent until the Government discharges its burden to prove his guilt by legal and competent evidence beyond reasonable doubt. See Article 51(c), Uniform Code of Military Justice, 10 USC § 851. Equally fundamental is the principle that an accused may not be compelled to testify against himself in a criminal prosecution. While he may voluntarily elect to take the witness stand and testify, an accused is perfectly free to refrain from doing so. United States Constitution, Amendment V; 18 USC § 3481; Article 31, Uniform Code of Military Justice, 10 USC § 831; Manual for Courts-Martial, United States, 1951, paragraphs 53*h*, 148*e*, and 149*b*(1), pages 75, 278, and 280.

The obvious corollary to those axioms is that the failure of an accused to take the witness stand may not be commented upon. The current Manual recognizes that rule in paragraph 72*b*, page 111, and this Court has repeatedly affirmed the proscription against such impermissible comment. See United States v Allinder, 9 USCMA 575, 26 CMR 355; United States v Bowen, 10 USCMA 74, 27 CMR 148; United States v Skees, 10 USCMA 285, 27 CMR 359; United States v King, 12 USCMA 71, 30 CMR 71. Cf. United States v Endsley, 10 USCMA 255, 27 CMR 329; United States v Seay, 13 USCMA 540, 33 CMR 72.

The reason for the rule against comments by the prosecutor on an accused's silence is aptly demonstrated by the following quotations from decisions of the United States Supreme Court:

". . . he [the prosecutor] intimated . . . as plainly as if he had said in so many words that it was a circumstance against the innocence of the defendant that he did not go on the stand and testify. Nothing could have been more effective with the jury to induce them to disregard entirely the presumption of innocence to which by the law he was entitled, and which by the statute he could not lose by a failure to offer himself as a witness." [Wilson v United States, 149 US 60, 66, 37 L ed 650, 13 S Ct 765 (1893).]

". . . An accused having the assurance of the court that his claim of privilege would be granted might well be entrapped if his assertion of the privilege could then be used against him. His real choice might then be quite different from his apparent one. . . . Elementary fairness requires that an accused should not be misled on that score. If advised by the court that his claim of privilege though granted would be employed against him, he well might never claim it. If he receives assurance that it will be granted if claimed, or if it is claimed and granted outright, he has every right to expect that the ruling is made in good faith and that the rule against comment will be observed." [Johnson v United States, 318 US 189, 197, 87 L ed 704, 63 S Ct 549 (1943).]

The status of the law, then, as to comments by a prosecutor on an accused's failure to testify, is plain. The question before us is simply whether the two quoted comments, made by trial counsel in the instant case, constitute such impermissible comment. We think not.

While trial counsel may not remark on an accused's failure to testify, he may, in closing argument, comment on the evidence and draw any conclusion supported by the record. United States v Day, 2 USCMA 416, 9 CMR 46; United States v Doctor, 7 USCMA 126, 21 CMR 252. In assessing situations of this sort, the United States Court of Appeals for the Tenth Circuit laid down the test of whether the language used was manifestly intended or was of such character that the triers of fact would naturally and necessarily take the prosecutor's remarks to be a comment on the failure of the accused to testify. Knowles v United States, 224 F2d 168 (1955).

Here trial counsel clearly made no direct reference to accused's failure to take the stand. Neither, ▮▮▮▮▮▮▮ we conclude, would his comments be taken by reasonable court-martial members to constitute an indirect reference to accused's silence. To the contrary, the prosecutor's statement was merely the obvious—that the deceased victim could not of course tell what he knew of the incident. But that is not to say trial counsel thereby put the onus on accused by highlighting the absence of any version of what transpired in the hotel room; this for the reason that the court had accused's version of events through his pretrial statement, which had been admitted in evidence. Accordingly, we conclude, in view of the nature of the argument by trial counsel, the posture of the record, and all the circumstances of the case, the prosecutor's remarks did not go beyond fair comment on the evidence. The thrust of the two remarks in question—extracted, incidentally, from argument by trial counsel covering eight single-spaced legal-size pages of typewritten transcript—was simply that the court-martial had only accused's version of what occurred before it, and that the Government, being unable to call the only other eyewitness, was forced to rely on circumstantial evidence. It would be speculative to say that trial counsel's argument was a reference to accused's failure to take the stand, and we decline so to hold. See State v Lewis, 156 La 985, 101 So 386 (1924); Valtiero v State, 153 Tex Crim 260, 219 SW2d 73 (1949).

In reaching this conclusion we note parenthetically that counsel for accused, at trial, apparently evaluated the prosecutor's two isolated remarks in the same vein. We have long held that the interpretation placed upon items by the parties at trial is entitled to weight in assessing the matter on appeal. See United States v Johnson, 3 USCMA 447, 13 CMR 3; United States v Acosta-Vargas, 13 USCMA 388, 32 CMR 388; United States v Green, 13 USCMA 545, 33 CMR 77. Here it would seem the defense did not view the argument as a comment on accused's silence, for no objection was interposed—not even to the law officer out of the hearing of the court members—as to any allegedly impermissible remarks.

For the above stated reasons, the first issue is resolved against the accused.

## II

The remaining issues concern instructional matters. As to the murder specification, the law officer gave the court-martial advice on the use of force for the protection of property, and on self-defense. Included in his instructions on the latter were the following:

"You are further advised that the accused is excused for killing in self-defense *if he believed* on reasonable grounds *that the killing was necessary* to save his own life, or to prevent great bodily harm to himself. To be excused for killing in self-defense, a person must have believed on reasonable grounds that the danger of being killed himself or of receiving great bodily harm was imminent, and no necessity will exist until the person, if he is not at his place of abode which may include a hotel room, an apartment, a barracks, or any other place where he sleeps and keeps his private possessions or at a place where he has a duty to remain, has retreated as far as he safely can.

"Unless he had there provoked the assault upon himself, or there needlessly resumed a fight, where a person is at his place of abode within the meaning of this term, as previously explained to you, or at a place where he has a duty to remain, he is not required to retreat any farther, but may stand his ground and use such force as may be necessary to repel the attack, even to the extent of killing his assailant, if such action is necessary to take his own . . . protect his own life, or to prevent great personal injury to himself.

"The matter of retreat must be governed by the following rules: Assuming danger is imminent, before a killing can be excused, where a person is not at his place of abode

within the meaning of this term as previously explained to you, or not at a place where he has a duty to remain, *the person must assume the duty to retreat as far as he safely can.* That duty is measured by the force and imminence of the danger and the availability of an opportunity by which the accused may retreat reasonably without increasing his peril." [Emphasis supplied by appellate defense counsel.]

The defense contends that the quoted self-defense instructions are prejudicially erroneous in the two respects emphasized, while the Government asserts, *inter alia*, that the issue of self-defense was not reasonably raised by the evidence.

We reject the Government's argument that the accused received, by reason of the law officer's instructions on self-defense, a gratui- ▉ tous windfall to which he was not entitled and which could not possibly operate to his prejudice. See United States v Regalado, 13 USCMA 480, 33 CMR 12; United States v Brown, 13 USCMA 485, 33 CMR 17; United States v Duckworth, 13 USCMA 515, 33 CMR 47; United States v Campbell, 13 USCMA 531, 33 CMR 63; United States v Green, 13 USCMA 545, 33 CMR 77. To the contrary, we are of the opinion that this record reasonably raises the issue of self-defense as to the murder charge, and that the law officer properly undertook to give instructions on that defense.

First, there is testimony which, if credited, would indicate accused was of good character and peaceable nature. It is clear he was of small stature,[2] and

the record will support the conclusion that accused was physically disabled to some degree by a hernia condition. Moreover, accused's version of the facts, as put before the court-martial in his pretrial statement,[3] reflects that accused was lured to a disreputable appearing hotel by Yi, a procurer, despite contrary instructions given by accused to the taxi driver who was driving the pair. Arriving in the room where the killing took place, accused found that the procurer's manner was no longer solicitous, but became threatening. The room was extremely small and cramped; the route to it through the hotel was circuitous; and the means of egress narrow and difficult. Furthermore, according to accused, when he initially refused Yi's demands, the latter invited his attention to the presence of two sinister-looking Koreans loitering outside the room. Thus accused's route of escape was blocked and he was impliedly threatened with the force of numbers of other Koreans who appeared to be Yi's cohorts.[4] When accused once more resisted Yi's directions, the latter removed his jacket and resorted to violence against accused. A struggle ensued and it appeared to accused that Yi called to his confederates for help. Accused heard approaching footsteps and claims he was fearful for his personal safety and for his property, as he believed he would be beaten and robbed. He was unable to shake Yi off, so accused resorted to use of his knife, occasioning the fatal stabbing.

With the record in that posture we have no difficulty concluding the evidence fairly raised the issue of self-defense. Indeed, the situation presented bears marked similarity to the

---

[2] According to the record accused was roughly the same size as the Korean decedent Yi who was about five feet, four or five inches in height and weighed some 120-odd pounds.

[3] This Court has long held that exculpatory portions of extrajudicial statements are sufficient to frame issues requiring instructions. United States v Johnson, 3 USCMA 209, 11 CMR 209, and authorities therein collated. Coincidentally, and as a matter of interest, we point out that *Johnson*

also involved a charge of murder of a Korean national by an American soldier.

[4] In this connection it is not insignificant that Kim, one of the men loitering outside was shown to be Yi's friend. Kim admitted he had been a procurer, and there is no dispute that he observed Yi and accused enter the hotel under such circumstances as to give rise to an inference that Yi was engaged in procurement on the night in question.

facts in United States v Smith, 13 USCMA 471, 33 CMR 3, to which the attention of the reader is invited. See also United States v Hayden, 13 USCMA 497, 33 CMR 29.

Obviously, we do not hold that, as a matter of law, the killing was in self-defense. That is not the test for determining whether an issue is reasonably raised. The burden of proof beyond reasonable doubt is on the Government, and if there is in the record evidence which, if credited, could raise a reasonable doubt whether the accused acted in self-defense, then the law officer is obligated to appropriately frame that issue and submit it for resolution to the triers of fact.

We turn, therefore, to an evaluation of the merits of appellate defense counsel's complaints concerning the law officer's advice on self-defense.

In the first facet of its attack on the instructions, the defense asserts the law officer was mistaken in advising the members of the court that accused might be excused for killing in self-defense "if he believed . . . that the killing was necessary." It is quite properly pointed out that one need not necessarily believe that killing is necessary before deadly force may be used in self-defense; and that the eminently more reasonable man who uses only such force in his own protection as he considers necessary, but which unexpectedly produces death, is not necessarily excluded from the sweep of lawful self-defense. Indeed, this Court long ago commented on the same general concept. See United States v Weems, 3 USCMA 469, 13 CMR 25. The defense contends that requirement of belief in the necessity of killing cannot be justified, and argues that "The guiding principle in invoking self-defense is utilizing the force which is honestly and reasonably thought necessary by one who believed the danger of death or great bodily harm was imminent."

Generally speaking, the latter statement validly sets forth the law, for as we recently pointed out, one who "in fact, and on reasonable grounds, fear[s] imminent death or serious injury," is entitled to resort to deadly force in self-defense. United States v Regalado, supra, at page 484. See also Meadows v United States, 82 F2d 881 (CA DC Cir) (1936); Josey v United States, 135 F2d 809 (CA DC Cir) (1943); Lujan v United States, 209 F2d 190 (CA10th Cir) (1953); United States v Ginn, 1 USCMA 453, 4 CMR 45; United States v Straub, 12 USCMA 156, 30 CMR 156; United States v Black, 12 USCMA 571, 31 CMR 157; United States v Acosta-Vargas, supra; and United States v Smith, supra. And we agree that one need not intend to kill before he may resort to deadly force in a proper case.

We are of the view, however, that the law officer gave proper guideposts to the court-martial on this point in the case at bar. Thus, under the instant circumstances it is unimportant whether or not accused in fact intended to kill Yi, for there is no question but that the latter's death did result from the deadly force accused in fact used. Accident and misadventure are not here involved. See United States v Weems, supra; United States v Redding, 14 USCMA 242, 34 CMR 22. Moreover, the defense extracts but one phrase from the law officer's advice. When the whole of his charge on this matter, which is quoted hereinbefore, is considered in context, it is clear the court members could not be misled by his advice. Thus, he stated accused should be "excused for killing in self-defense if he believed on *reasonable* grounds that the killing was necessary to save his own life, or to prevent great bodily harm to himself." Then he immediately went on to elaborate as follows: "To be excused for killing in self-defense, *a person must have believed on reasonable grounds that the danger of being killed himself or of receiving great bodily harm was imminent.*" (Emphasis supplied in both instances.)

We find no merit in this phase of the assigned error. Clearly the law

**321**

officer's advice in this regard was not erroneous. Indeed, as the Government points out, the questioned instruction is the same as that recently before us in United States v Green, supra, another murder case, where we noted:

"... Thus, he [the law officer] had previously—and quite properly—charged that one was entitled to kill in self-defense if he believed, upon reasonable grounds, such action necessary to protect against the imminent danger of death or grievous bodily harm to himself." [13 USCMA at page 548.]

As to the other aspect of this assignment, however, we must agree with appellate defense counsel that the law officer's instructions were prejudicially erroneous. Thus, in both the first and third paragraphs of the instructions quoted hereinbefore, the court-martial was advised that self-defense was not available to one who had not retreated as far as he could in safety. It is settled that there is no such categorical rule, and we do not understand the Government to assert otherwise. See United States v Smith, supra, and authorities therein cited. See also United States v Hayden; and United States v Green, both supra. The correct principle, as we pointed out in the *Smith* and *Hayden* cases, is that the opportunity to retreat safely is but one circumstance, to be considered with all others, in determining whether the action taken was reasonably necessary. 13 USCMA at page 479, and 13 USCMA at page 498. See also Brown v United States, 256 US 335, 343, 65 L ed 961, 41 S Ct 501 (1921).

In all fairness to the law officer in the present case, we recognize that he endeavored to give the triers of fact a yardstick to use in resolving whether accused was obliged to assume the duty to retreat. Likewise, it is appropriate to invite attention to the fact that the instant trial took place prior to the recent decisions of this Court illuminating this point, and the law officer was without the benefit of that guidance. Nevertheless, it is clear the instructions given to the court-martial on retreat were erroneous and prejudiced accused's claim of self-defense to the alleged murder of Yi.

### III

That brings us to the final issue. The defense, at trial, requested an instruction on self-defense as to the aggravated assault allegedly committed on Kim. The law officer, however, declined to grant the request and gave no such instruction. The defense argues before us that this omission constituted prejudicial error. We agree.

If the issue of self-defense as to the stabbing of Kim was reasonably raised by the evidence, there can be no question that the law officer erred. The previous discussion in part II is equally applicable here, and largely dispositive.

As we have seen, the record is such as to permit a finding that accused, hampered somewhat by his physical condition, was trapped in the hotel room to which he had been lured, and where Yi's intentions were unmistakably demonstrated. According to accused he was attacked by Yi and menaced by two other Koreans apparently joined with Yi in a criminal venture. And the latter pair, if accused's statement be believed, not only had his escape cut off, but had been called by Yi and were coming down the hall to assist the decedent in the attack on accused.

If the finders of fact were to credit accused's version of the events that occurred in the hotel, he—not Yi or Kim—was the victim. He was attempting to leave but prevented by Yi, and only stabbed the decedent in order to get away, which accused immediately tried to do. As accused reached the door, one of Yi's apparent confederates, to whom the former believed the decedent had called for assistance, burst down a narrow hallway blocking his exit from a precarious situation.

In short, the two alleged offenses might permissibly be considered by the court members to be part of a unitary transaction. True enough, Kim was unarmed. Indeed, Yi had no weapon

either. The situation was fluid and fast moving, however, and the evidence permits the conclusion that accused was reasonably motivated by the same fear when he struck out at Kim to effect his escape, as when he stabbed Yi. And under certain circumstances one can reasonably be put in fear of death or grievous bodily harm by force of numbers, or other factors, without being attacked with a weapon. United States v Regalado, supra, at page 484.

We hold, therefore, that the law officer should have instructed the court-martial on self-defense in connection with the charged offense of assault with a dangerous weapon.

In view of our holdings, the findings of guilty on the charges and specifications cannot stand. The decision of the board of review is reversed, and accused's convictions and sentence are set aside. A rehearing may be ordered, at which the issues are submitted under appropriate instructions.

Chief Judge QUINN and Judge FERGUSON concur.