UNITED STATES, Appellee

v

LYMORIS E. THORNTON, Private,
U. S. Army, Appellant

19 USCMA 140, 41 CMR 140

No. 22,135

December 19, 1969

*Captain Norman L. Blumenfeld* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Lieutenant Colonel Charles W. Schiesser,* and *Captain Monte Engler.*

*Captain Edwin L. Gage* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant* and *Major Edwin P. Wasinger.*

## Opinion of the Court

FERGUSON, Judge:

The accused was convicted by general court-martial, convened at Fort Carson, Colorado, of one specification of assault with a dangerous weapon, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928. Intermediate appellate authorities have affirmed the findings without change. As the case reached this Court, the accused's sentence extends to a bad-conduct discharge, confinement at hard labor for fifteen months, and forfeiture of $60.00 per month for eighteen months. We granted review on the following issues:

I. Whether the law officer erred to the substantial prejudice of the appellant by failing to instruct the court that when voting on proposed sentences, it should begin with the lightest proposal and continue in this manner until a sentence is adopted by the concurrence of the required number of members.

II. Whether the law officer erred in not giving an instruction on self-defense.

We did not require briefs or arguments on the first issue for the presence of reversible error as to sentence is patent. Paragraph 76b(2), Manual for Courts-Martial, United States, 1951; United States v Johnson, 18 USCMA 436, 40 CMR 148; United States v Newton, 18 USCMA 562, 40 CMR 274; United States v Conner, 19 USCMA 74, 41 CMR 74. As we said in Johnson, at page 437:

"A court, uninstructed as to this procedure, may well believe that the voting could properly commence with consideration of the most severe proposed sentence. Since we have no way of ascertaining what took place, the voting having been conducted in secret, and, inasmuch as, in our opinion, the matter concerned a substantial right of the accused, the doctrine of plain error may be properly invoked. United States v Stephen, 15 USCMA 314, 35 CMR 286. Reversal as to sentence is required."

With reference to the second issue, it should be noted that trial defense counsel specifically requested an instruction on self-defense and the whole tenor of his case was pointed toward that issue. The law officer based his refusal to instruct on the ground that in his opinion the issue was not raised by the evidence. In addition, he specifically instructed the court that "Self-defense is not in issue in this case."

It is apparent from the record of trial that what began with a disagreement between friends over who was to dance with a young lady at a service club, deteriorated into a physical encounter and ended with one of the combatants suffering a knife cut in the chest.

The victim testified that while performing a dance maneuver, he turned from his partner and when he again faced her he found that the accused had stepped between them. The victim shoved the accused aside and told him to wait until the next dance. As he resumed dancing he felt a sharp blow on the back of his head. He turned and saw the accused going away from him. He followed the accused and the accused seemed to trip. At that time, the victim testified, he saw the accused reach into his right-hand pocket. He knew the accused carried a knife in that pocket. The victim then picked up the accused and threw him to one side. After returning to his dancing partner, the victim saw the accused coming toward him with a knife in his right hand. Combat ensued during which the victim was cut on the chest. Only after he got through the crowd and returned to his partner did he observe the cut. He did not feel it during the encounter with the accused. The only other Government evidence consisted of the introduction of a pretrial statement of the accused in which the accused

141

stated he drew the knife to "defend myself from getting whipped by HUMPHRIES" (Prosecution Exhibit 2), and testimony as to a particular knife which another soldier had loaned to the accused. There were no prosecution witnesses to the encounter.

The accused testified that he did not attempt to dance with the girl but was merely crossing the dance floor. The victim struck him and knocked him down. He got up and asked the victim why he hit him. Receiving no reply, he struck the victim on the head with his fist. The victim then came after him, struck him and, after several mutual blows, the accused was again knocked to the floor. After he regained his feet, he took out his knife and tried to open it while moving away from the victim who was again coming toward him. The victim grabbed him before he had it fully open. He never got it fully open and the blade closed against his finger cutting it during the struggle. He testified that he did not cut the victim and that his action in drawing the knife was to protect himself. He had been injured in an accident and was partially paralyzed in 1967 and he feared the victim, a man considerably larger than himself,[1] would hurt him if the fight continued. When he was knocked down the second time, the accused asserted that he withdrew from the fight and thereafter did nothing more than was necessary to protect himself. He had been struck two or three times before taking out his knife. He tried to get away but could not because of the crowd. A general fight ensued during which two other men were cut but he was not a participant.

Several defense witnesses, who were present in the club, partially observed the encounter but none saw a knife in the accused's hand. In general, their testimony substantiated the accused's testimony, as well as that of the victim, that the latter struck the first blow. One witness saw a person, not the accused, strike the victim. He, however, did not see the fight between the accused and the victim.

We believe, under the facts in this case, that the law officer erred to the substantial prejudice of the accused in his determination that the issue of self-defense was not raised by the evidence. United States v Holly, 18 USCMA 413, 40 CMR 125. His instruction that self-defense was not in issue deprived the court of its right to make that determination as effectively as the instruction in *Holly* that there was no justification or excuse for the assault in that case.

Holly was charged with and convicted of assault with a knife, thereby inflicting grievous bodily harm. The evidence reflected that when Holly, noticing a controversy between the ultimate victim (Williams) and a barmaid, inquired what was going on, the victim stated it was none of his business, then grabbed him and they tussled. When separated, it was learned that Williams had been cut. The defense proceeded on a twofold theory: first, that the accused did not inflict the injury on the victim; and, secondly, since it was conceivable the court might find that the accused did inflict the injury, then, in such an event, he was acting in self-defense to an attack by the victim. The law officer refused to give the instruction on self-defense since he did not believe the evidence raised the issue.

In finding prejudicial error in *Holly*, we said, at pages 416–417:

"The accused defended on the ground that he was initially attacked by Williams and was responding thereto. When the law officer told the court there was *no justification or excuse for the assault on Williams*, he, as a matter of law, rejected the accused's defense and thereby foreclosed the court from consideration of this factual issue. This was error. Roe v United States, 287 F

---

[1] The victim is six feet four inches tall and weighs 190 pounds. The accused is five feet six inches tall and weighs 140–146 pounds.

2d 435 (CA5th Cir) (1961). As the court in *Roe* stated at page 440:

'. . . [N]o fact, not even an undisputed fact, may be determined by the Judge. The plea of not guilty puts all in issue, even the most patent truths. In our federal system, the Trial Court may never instruct a verdict either in whole or in part.'

"It cannot be asserted that the issue was not in evidence, for the sergeant, who separated the victim and the accused, testified that after the accused had inquired as to what was going on, 'All of a sudden, Robert Williams lunged over and grabbed Private Holly and they tussled a while, just like a flash. I rushed between them and pulled them apart.'

"In United States v Roberson, 12 USCMA 719, 722, 31 CMR 305, we adopted the following quotation from Perez v United States, 297 F2d 12, 15 (CA5th Cir) (1961):

' "It is elementary law that the defendant in a criminal case is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence. Tatum v United States, 190 F2d 612 (DC Cir 1951). A charge is erroneous which ignores a claimed defense with such a foundation. Hyde v United States, 15 F2d 816 (4th Cir 1926)." '

For further citations on the need for appropriate instructions see Tedrow, Digest, Annotated and Digested Opinions, U. S. Court of Military Appeals, Instructions, Issues, page 515, *et seq.*

"Not only did the law officer ignore the claimed defense which had a foundation in the record, but he specifically informed the court that it was not available to the accused. His instruction was *obviously* directed toward his prior denial of a requested instruction on self-defense for, as he then informed defense counsel, 'The evidence is of a mutual lunge.' It would appear that he may have believed the accused resorted to inordinate force in his encounter with the victim, because he also told counsel, 'There is no evidence of fear or anything else, that he was to be injured.' But that is not the only test to be applied where self-defense is concerned. As we said in United States v Gordon, 14 USCMA 314, 321, 34 CMR 94:

'Obviously, we do not hold that, as a matter of law, the killing was in self-defense. That is not the test for determining whether an issue is reasonably raised. The burden of proof beyond reasonable doubt is on the Government, and if there is in the record evidence which, if credited, could raise a reasonable doubt whether the accused acted in self-defense, then the law officer is obligated to appropriately frame that issue and submit it for resolution to the triers of fact.'

Once the issue is raised, as here, there is a concomitant requirement for full and complete instructions, tailored to the evidence of record, including the use of a knife to parry a simple assault. See cases collated in *Gordon,* at pages 320 and 321. See also United States v Vaughn, 15 USCMA 622, 36 CMR 120. The court members do not have to believe the defense evidence, but that decision is theirs alone. The law officer may not take it from them. As stated in *Young v United States,* 309 F2d 662 (CA DC Cir) (1962):

'. . . However implausible, unreliable or incredible only the jury had the right to make the evaluation of . . . [the witness'] testimony. The evidence of a simple assault cannot be regarded as strong or convincing and perhaps the source could well be regarded as of dubious reliability, but the question of its weight and credibility was for the jury. . . . The ruling denying the lesser included offense instruction

**143**

necessarily involved an appraisal of that evidence and . . . [the witness'] credibility by the District Judge but the trier cannot withdraw that appraisal from the jury. Kinard v United States, 68 App DC 250, 96 F2d 522 (1938). See also Stevenson v United States, 162 US 313, 323, 16 S Ct 839, 40 L Ed 980 (1896).'

See also United States v Bellamy, 15 USCMA 617, 621, 36 CMR 115, wherein we quoted at length from Stevenson v United States, 162 US 313, 40 L Ed 980, 16 S Ct 839 (1896)."

In the case at bar, the victim himself testified that he struck the first blow. A mutual affray followed in which blows were struck by each of the antagonists. After being knocked to the floor twice, the accused testified, he became fearful of being badly hurt if the fight continued; he took out his knife to protect himself; and he attempted to withdraw from the fight but was prevented by the crowd. He denied responsibility for the cut received by the victim. The considerable difference in size between the accused and the victim is also relevant to the issue. United States v Black, 12 USCMA 571, 31 CMR 157. The Government's own evidence contained accused's assertion of self-defense. Clearly "there is in the record evidence which, if credited, could raise a reasonable doubt whether the accused acted in self-defense." United States v Gordon, 14 USCMA 314, 321, 34 CMR 94.

Where an issue is reasonably raised by the evidence, the law officer's obligation to instruct thereon is clear. In discussing the matter in United States v Evans, 17 USCMA 238, 242, 38 CMR 36, we said:

"Preliminarily, we note it is an entirely human tendency to listen to the presentation of evidence or to read a record of trial, accept certain testimony and reject other, arrive at factual conclusions, and proceed thereafter to make decisions of law based upon such preconceived notions. It is entirely human to do so, but as regards the raising of issues, so to act is not the function of this Court, the board of review, the convening authority, or the law officer. In this respect, Congress has confided the fact-finding power exclusively to the members of the court-martial. It is for them, not for the law officer or an appellate body to sift the evidence and determine whether it chooses to believe an apparently overwhelming case presented by the United States or the single, unsupported word of the accused. To make this choice, it must be properly instructed, and, when the law officer or appellate bodies, understandably or not, invade the province of the fact finders, and deny instruction on that basis, reversal will inevitably come. The Government will be put to the time, expense, and difficulties incident to another trial; the accused will have to undergo another hearing at which his contentions will finally be submitted; and all this will occur because of a failure to trust to the judgment of those solely charged with the responsibility of finding the facts and giving credibility where credibility is due.

"Thus, we have long held the test whether an offense is reasonably raised is whether the record contains some evidence to which the military jury may attach credit if it so desires. United States v Jones, 13 USCMA 635, 33 CMR 167; United States v Remele, 13 USCMA 617, 33 CMR 149; United States v Kuefler. 14 USCMA 136, 33 CMR 348. It matters not that the accused is the sole source of his contention. He certainly 'has the capacity to testify directly to the intent, knowledge, or other *mens rea* which fills out and characterizes his acts either as criminal or legally blameless.' United States v Remele, supra, at page 621. And the reasonable character of his testimony is 'for the determination of the court-martial, under proper instructions.' United

144

States v Jones, supra, at page 640. As we said in United States v Kuefler, supra, at page 139:

'So also do trial judges and appellate bodies interfere with the function of the court members and deprive the accused of his right to a primary trial on the facts when the credibility of his claims is found wanting in light of the strong case against him.'

"Hence, without thought of reprimand and in the interests of the sound administration of justice, we strongly recommend in all cases a close examination below of the evidence presented, submitting all conflicts therein to the court-martial with proper instructions on the elements of lesser crimes and affirmative defenses thereby raised. Needless reversals will thereby be avoided, and the accused will receive his proper day in court, with justice under our system being done to all concerned."

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

DARDEN, Judge (concurring):

If I were responsible for fact finding in this case, I would find the record of the testimony by the accused unconvincing. But I am unable to say that all reasonable persons must agree with my evaluation. The court-martial should decide whether the physical conflict in the instant case is a mutual affray. United States v Holly, 18 USCMA 413, 40 CMR 125.

I, therefore, join in reversing the conviction. When an accused testifies he acted in self-defense and requests that the military judge instruct the court on the law applicable to this defense, I believe the court-martial should be permitted to determine whether his testimony and other evidence meet self-defense requirements.

QUINN, Chief Judge (dissenting):

As to the voting procedure on the sentence, I adhere to my views in United States v Johnson, 18 USCMA 436, 40 CMR 148. As to the claim of self-defense, the accused contended he did not inflict the injury upon the victim, who, incidentally, while taller and heavier than the accused, was recovering from heart surgery which was undoubtedly known to the accused because he became acquainted with the victim while both were in the hospital; and the accused's testimony demonstrates that the victim twice walked away from the accused, and the accused precipitated the last fight while armed with the knife. United States v O'Neal, 16 USCMA 33, 36 CMR 189; United States v Rine, 18 USCMA 421, 40 CMR 133. I would, therefore, affirm the decision of the board of review.