UNITED STATES, Appellee,

v.

Private E-1 Jerome ADAMS, SSN
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, United States
Army, Appellant.

CM 440921.

U. S. Army Court of Military Review.

18 May 1982.

Colonel Edward S. Adamkewicz, Jr.,
JAGC, Captain Joseph A. Russelburg,
JAGC, and Captain Gunther O. Carrle,
JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major John
T. Edwards, JAGC, Captain Paul K. Cascio,
JAGC, and Captain Paul E. Jordan, JAGC,
were on the pleadings for appellee.

Before JONES, McKAY and HANFT,
Appellate Military Judges.

## OPINION OF THE COURT

McKAY, Judge:

The appellant was convicted, contrary to
his pleas, by a general court-martial (judge
alone) of destruction of government proper-
ty, unlawful entry, and assault with intent
to rape, in violation of Articles 108 and 134,
Uniform Code of Military Justice, 10 U.S.C.
§§ 908 and 934. The convening authority
approved the adjudged sentence to dishon-
orable discharge, confinement for three
years, forfeiture of all pay and allowances,
and reduction to Private E-1.

Two assertions of error have been made to this Court by the appellant. First, he contends the evidence is insufficient to support his conviction for assault with intent to commit rape. Second, he contends that the trial judge erred to his substantial prejudice by denying his motion to suppress a tape recording and the transcripts derived therefrom that were admitted as evidence to prove the assault with intent to rape charge. He contends the tape was obtained in a manner contrary to Army policy.

■ The evidence in this case establishes that on the night in question, the victim, Private L, first encountered the appellant at the Neubruck Club where he made various overtures of a sexual nature, e.g., pulling her dress down and touching her leg with his hand. After Private L returned to her quarters appellant knocked at her door, wedged his foot in the doorway when she opened it, and refused to leave despite her repeated requests. While standing at the door he grabbed her breast and pushed her down; as she got up, she switched on a tape recorder. For the next twelve minutes most of the conversation between the appellant and Private L was recorded without appellant's knowledge. The appellant by then had entered Private L's room where he proceeded to cajole her in an attempt to awaken her desires, persisted in efforts to overcome her resistance to his advances, asked her to make love to him, and ignored her repeated requests for him to leave.

We are convinced beyond reasonable doubt that by his subsequent conduct the appellant assaulted Private L by grabbing her breast, pushing her down on a bed, covering her mouth, forcing her to touch his "private parts", laying on top of her and fondling the area of her vulva. We find also that prior to and during the assault the appellant intended to overcome any and all resistance by Private L and to rape her. Appellant's licentious conduct throughout the evening, both in the Neubruck Club and

in Private L's room, demonstrates an amateurish, crude and immature attempt to seduce her. When this failed he resorted first to deceit and then to force in order to obtain his lascivious objective. Fortunately, appellant interrupted his attack upon Private L to lock the door, thus giving her the opportunity to summon help before he could accomplish the intended rape.[1] We affirm the findings of guilty to this offense.

The appellant's second assignment of error challenging the admissibility of the tape recording and resulting transcripts, raises a novel and more complex issue to resolve. The contents of the recording clearly substantiate Private L's testimony and the presence of an intent by appellant to rape her. As such it is a substantial and material portion of the evidence upon which appellant's conviction is based. Appellant argues that it was improperly admitted into evidence. We do not agree.

Paragraph 5–21a, Army Regulation 600–20, dated 15 October 1980, prohibits as a matter of official policy "the acquisition by . . . electronic means of any communication" by all Department of the Army military and civilian personnel without the consent of all parties to the communication. Given as an example of what is prohibited by the regulation is the act of recording "private face-to-face conversations, unless the prior consent of all parties to such recording is obtained." The appellant contends that Private L violated this policy when she recorded, without his consent, the challenged tape.

The stated purpose of Army Regulation 600–20 is to prescribe policy on the basic aspects of command, military conduct and discipline, and the determination and precedent of rank. It also describes standards which govern participation by Army members in political activities and public demonstrations.[2] The regulation is made applicable to active and inactive units of the Regu-

---

1. The appellant's violent actions, his crude attempts to seduce, his expressed desire to have sexual intercourse and to "get his rocks", and the length of time of his encounter with Private L make this case distinguishable from the facts

of *United States v. Sampson*, 7 M.J. 513 (A.C.M.R.1979).

2. Paragraph 1–1.

lar Army, the Army Reserve, and to the Army National Guard.[3] Some paragraphs, including paragraph 5–21, are made applicable specifically to individual Army members.

Chapter Five of the regulation is entitled "Military Conduct and Discipline" and in addition to the subject of monitoring and recording conversations, it prescribes policy on a variety of other subjects, e.g., Military discipline, Exercising military authority, Disciplinary authority of commanders, Communicating with members of Congress, Publishing of articles, Participation in pageants and shows for civilian entertainment, to list a few. Considering the subjects lumped together in this chapter it appears to us that in promulgating it the Secretary of the Army intended to control and regulate certain official or quasi-official activities. Specifically, we believe he was aiming at conduct and activities that have a pronounced and substantial impact on discipline and security within the Army, and are of a type that affect its public image, or relationship within the Government or with the civilian community. From this we can infer that the purpose of the policy against unauthorized recording and monitoring of private conversations of Army personnel is the prevention of embarassment and a loss of public confidence in the Army.

█ We find, therefore, that the policy in paragraph 5–21, Army Regulation 600–20, was not intended to transcend recognizable and legitimate management responsibilities to govern official or quasi-official conduct and activities, and thereby does not proscribe the recording by an off-duty soldier in her private living quarters of what occurred during the commission of a serious and repulsive crime against her person by an intruder. Under the facts of this case, Private L could legally have used any force necessary, even perhaps to include killing the appellant, in order to prevent a rape of her person. *United States v. Gordon*, 14

U.S.C.M.A. 314, 321, 34 C.M.R. 94, 101 (1965); paragraph 216*c, Manual for Courts-Martial*, United States, 1969 (Revised edition); *Cf., Byrd v. United States*, 312 F.2d 357, 114 U.S.App. DC 117 (1962).[4] To hold that under such circumstances she could not record what her attacker said during the encounter for use as evidence against him in either a criminal or civil legal proceeding, or otherwise, would be absurd. In short, we do not believe the regulation envisioned any control of the recording of a conversation under circumstances as occurred in this case and we so hold.

█ Our examination of the record discloses no other basis for finding the trial judge erred by admitting the tape and resulting transcripts. Neither the Constitution nor any Federal statute, prohibits the recording of a face-to-face conversation by an individual in his private capacity, without prior consent of all parties. Moreover, there certainly could be no expectation of privacy on the part of appellant. He unlawfully entered, Private L's room, refused to leave when repeatedly requested to do so and assaulted her with intent to rape. Not only could he expect to have the victim testify against him regarding his conduct but it appears that during a substantial part of the time involved the door of the room was open to a hall used by other occupants of the building. Under these facts the appellant could not expect what he said to Private L during his encounter with her to have remained confidential. Accordingly, neither Rule 311 or 317, Military Rules of Evidence, preclude the admission into evidence of the tapes and transcriptions.

The findings of guilty and the sentence are affirmed.

JONES, Senior Judge, with whom Judge HANFT joins, concurring:

I agree with Judge McKay that the evidence of assault with intent to rape was

---

3. Paragraph 1–2.

4. For a general discussion of justifiable homicide in the prevention of a crime and self-defense, *see* 40 Am.Jur.2d, Homicide §§ 121, 122 and 139 (1968).

sufficient and that the trial judge ruled correctly in admitting the evidence from the tape recording. Paragraph 5–21a, Army Regulation 600–20, dated 15 October 1980 has no applicability in this case.

Perhaps Judge McKay is correct in implying that under certain circumstances a valid military purpose exists for the prohibition in the regulation against recording private face-to-face conversations without the prior consent of all parties, but I am unwilling to go that far. If there is a need in this area, a properly limited prohibition could probably be drawn but such an overly broad proscription as now exists, will not withstand judicial scrutiny. Its inclusion in a regulation unnecessarily intrudes on individual rights and serves as an insult to the military and civilian personnel purportedly covered.