UNITED STATES

v.

**Ronald Scott FLINCHBAUGH, 211 44 4988, Fireman Apprentice (E–2), U. S. Navy.**

**NCM 76 1414.**

U. S. Navy Court of Military Review.

Sentence Adjudged 19 Feb. 1976.

Decided 15 Feb. 1977.

LT Lawrence S. Smith, JAGC, USNR, Appellate Defense Counsel.

Joseph W. Moyer, Esq., Individual Appellate Defense Counsel.

LT Patrick A. Fayle, JAGC, USN, Appellate Government Counsel.

Before CEDARBURG, C. J., and WRAY and MURRAY, JJ.

WRAY, Judge:

■ In a contested trial by general court-martial to a panel of officer and enlisted court members conducted at the Naval Support Activity, Long Beach, California, appellant was convicted of rape in violation of Article 120, 10 U.S.C. § 920, Uniform Code of Military Justice, and two offenses of indecent acts by having a woman masturbate him in violation of Article 134, UCMJ.[1]

■ Each of the three offenses of which appellant was convicted was alleged and found to have occurred on a different date and to have involved a different woman, unrelated to appellant. Although each of the three women were civilians, since the offenses were alleged and found to have occurred at the Long Beach Naval Support Activity, the offenses were clearly service-connected and within the jurisdiction of the court-martial. *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

■ At the conclusion of the lengthy judicial proceedings in this case the court members sentenced appellant to a dishonorable discharge, confinement at hard labor for eight years, forfeiture of all pay and allowances, and reduction to pay grade E–1. The convening authority reduced the confinement to five years but otherwise approved the sentence adjudged.[2]

Appellant has assigned a number of errors, but only two warrant discussion. These two assigned errors each involve the adequacy of the trial judge's instructions to the court members on findings. First, appellant contends he was prejudiced because the judge did not instruct the court members on the offense of adultery[3] as an Article 134, UCMJ, lesser included offense of rape; and second, appellant asserts he was prejudiced as to all the guilty findings because the judge did not advise the court

---

1. Appellant was found not guilty of assaulting each of the two women who the court members found had masturbated him and he was also found not guilty of wrongfully threatening one of the two. These two women were both unmarried, about the same age as appellant, and considerably younger than the married victim of the alleged rape.

Although the findings of the court members are clearly reflected in the record proper as orally announced by the president of the court, the document containing the written findings from which the president read in announcing findings was not marked as an appellate exhibit and is not included with the record. This document should have been labeled as an appellate exhibit and attached to the record of the proceedings. MCM, 1969 (Rev.), App. 8 at A8–23.

2. In acting on the sentence the convening authority directed application of the forfeiture to pay becoming due on and after the date of his action but he did not expressly state when the

forfeiture was to apply to allowances. Although no direction was given with respect to allowances, since application of the forfeiture to allowances was not expressly deferred by the convening authority, forfeiture of allowances was effective on the date of his action. Article 57, UCMJ; MCM, 1969 (Rev.), par. 88*d* (3).

3. In his original brief filed here appellant did not contend that adultery was in issue at trial nor did the government mention adultery in its response. The Court requested that the issue of adultery be briefed and in his more recent brief, appellant, for the first time, asserted that adultery was raised by the evidence as a lesser offense of rape.

The government in its two briefs filed here in response to appellant's more recent brief takes the position that adultery was not in issue during the trial proceedings.

members that they were not to consider appellant's failure to testify in arriving at their findings.

## I

The trial judge did not instruct the court members that adultery was a lesser included offense for them to consider as an alternative to rape. Adultery was not mentioned during the trial proceedings before the court members[4] and whether, as appellant now contends, the judge should have given an instruction on adultery depends upon the evidence of record.

The 28 year old alleged rape victim testified that she had been visiting relatives in the civilian community outside the Naval Support Activity while her husband had remained at home in another State. On the evening the rape was reported to have occurred she had accompanied her stepmother to the Enlisted Club at the Naval Support Activity.

Since she was not interested in playing bingo which her stepmother enjoyed, the alleged rape victim parted company with her stepmother and positioned herself in the doorway to the Club's dance floor until she was invited to join an otherwise all male table.

In accepting the offer and joining the all servicemen group at the table the alleged rape victim took a seat next to appellant, who was then 19 years of age. During the course of the evening she danced with a number of those at the table, including appellant with whom she engaged in considerable conversation. Her testimony implicitly indicated that during their conversation she informed appellant she was married and moreover, she was adamant and unequivocal in stating that throughout the course of the evening her wedding ring was worn exposed on the ring finger of her left hand.[5]

As the evening progressed the alleged rape victim accompanied appellant outside the dance floor to a balcony area. She stated that sometime thereafter it appeared from the movement of people within the Club that bingo was over for the night; however, she did not see her stepmother among those who had left the bingo area and she therefore decided to look for her.

After she and appellant did some searching for her stepmother, which included checking the parking lot and then returning to the Club's balcony area, the alleged rape victim testified that appellant suggested that her stepmother might have gone to the lounge of the nearby bowling alley. They then proceeded down a stairway leading outside the Club. While on the stairway the alleged rape victim stated that appellant became amorous. She rejected his advances and he then grabbed her around the neck and threatened to slit her throat and cut off her breasts were she uncooperative. She stated she tried to resist and scream, but he tightened his hold on her throat and pulled her outside the building to a grassy area where he pushed her to the ground and then required her to move back among the bushes.

The alleged rape victim testified that she was in grave fear and pleaded with appellant not to hurt her. She said because of her apprehension she submitted to his desire for sexual relations. Pursuant to his demands for assurance during coitus she complimented him on his performance and when she noticed two shore patrolmen approaching the area she alerted him to their presence. After the sexual act was complete appellant escorted her back into the

4. Trial defense counsel tendered proposed, specific instructions to the trial judge during a session conducted out of the presence of the court members after both sides had rested and before argument on findings was presented.

Contrary to the requirement of MCM, 1969 (Rev.), pars. 82b (5) and 73d, the proposed instructions of the defense were not marked as an appellate exhibit and are not included with the trial record; however, adultery was apparently not mentioned as a lesser offense of rape in the proposed defense instructions since during the session conducted out of the presence of the court members the matter of adultery was never discussed.

5. There was other testimony introduced that contradicted her testimonial claim that she was wearing a wedding ring.

Club and returned to his table. She then reported the incident.

Special Agent David E. Watson of the Naval Investigative Service, who had interviewed appellant in advance of trial, testified for the prosecution. In his testimony Special Agent Watson indicated that after he had advised appellant of his rights under Article 31(b), UCMJ, and *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967), appellant voluntarily participated in an interview. During the interview appellant denied the misconduct of which he was then suspected and, with respect to the alleged rape, appellant acknowledged having sexual intercourse with the alleged rape victim, but said that she had voluntarily engaged in intercourse with him.

Rape is defined under Article 120, UCMJ, as the commission of ". . . an act of sexual intercourse [by a male] with a female not his wife, by force and without her consent . . ."

Unlike rape, adultery involves neither force nor lack of consent and in military law adultery may be defined as an act of sexual intercourse between persons of the opposite sex not married to one another but at least one of whom then had a spouse. *See United States v. Melville,* 8 U.S.C.M.A. 597, 601, 25 C.M.R. 101, 105 (1958).

That the alleged rape victim was a married woman whose husband was not appellant at the time she and appellant had sexual intercourse is not in dispute. Moreover, it may be inferred from her testimony that appellant was aware of her marital status both from the conversation she said she had with him and from her testimony that she wore her wedding ring throughout the evening.

The military judge is required, pursuant to the *Manual for Courts-Martial, United States, 1969* (Revised Edition), paragraph 73a to give ". . . those instructions which are required by the law in the light of the circumstances of the case," and:

"Every offense which is reasonably raised by the evidence should be mentioned and must be the subject of an instruction with its attendant limitations and should

there be doubt this ought to be resolved in favor of the accused. There is no way in which appellate bodies can ascertain what a court-martial uses as a measuring rod to determine the appropriate degrees of an offense unless the gradations in issue are identified clearly by instructions and the accused is entitled to have the accuracy of the rod determined on appeal." *United States v. Floyd,* 2 U.S.C.M.A. 183, 188, 7 C.M.R. 64, 69 (1953).

Notwithstanding the alleged rape victim's testimony that her sexual intercourse with appellant had been nonconsensual and motivated by fear generated by appellant's unlawful use of force, there was other contradictory evidence before the court members, *i. e.,* appellant's pretrial statement introduced by the prosecution. This statement unequivocally refuted the reasons given by the alleged rape victim for her participation in sexual intercourse with appellant. Contrary to her testimonial version, appellant's statement indicated that she had voluntarily engaged in coitus with him. This evidence, together with the evidence of her marital status and appellant's inferred knowledge of that status, constituted ample evidence placing adultery, a lesser felony of rape, *cf. United States v. Melville, supra,* in issue.

Since the adultery offense reasonably raised by the evidence was not mentioned during the proceedings by any of the parties to the trial, it is concluded that the trial judge and counsel for both sides were totally unaware that as a result of the evidence introduced by the prosecution, adultery had been placed in issue.

There was no knowing, informed, intelligent waiver by the defense of an appropriate instruction by the trial judge on the lesser offense of adultery which may have excused the judge from giving such an instruction and the judge therefore had a duty to instruct the court members on this lesser offense as an alternative to the crime of rape as appellant now contends. *United States v. McGee,* 23 U.S.C.M.A. 591, 592, 50 C.M.R. 856, 857, 1 M.J. 193, 194 (1975);

*United States v. Flipper*, 16 U.S.C.M.A. 622, 624, 37 C.M.R. 242, 244 (1967). *United States v. Floyd, supra.* Also see *United States v. Gaiter*, 23 U.S.C.M.A. 438, 50 C.M.R. 397, 1 M.J. 54 (1975); *United States v. Clark*, 22 U.S.C.M.A. 576, 48 C.M.R. 83 (1973).

Since the judge did not instruct the court members on the lesser offense of adultery, correction for this type of prejudicial error would ordinarily require either a rehearing on the alleged rape offense or a reduction in the gravity of the finding of rape to that of adultery with a concomitant reassessment of the sentence. But, there is yet another assigned error affecting all the findings that must be discussed before this case may be disposed of.

## II

The other error assigned by appellant warranting discussion concerns the judge's failure to advise the court members not to consider appellant's silence against him.

During the session on findings' instructions conducted before the trial judge without the court members, trial defense counsel's written request for instructions submitted to the trial judge included a request that the court members be instructed on appellant's right to remain silent.

The judge advised trial defense counsel that he considered such an instruction ". . . a dangerous one and it highlights the fact that the accused has not testified, in view of that you still want the instruction[?]" The defense counsel responded "Yes, sir", to which the judge replied "Very well."

 Subsequently, during trial counsel's opening argument to the court members on findings, trial defense counsel objected to what he considered was impermissible argument by trial counsel's commenting upon appellant's failure to testify.[6] The judge made no express ruling on the objection other than to note it.

---

**6.** Argument commenting upon the accused's failure to testify is Constitutionally impermissible, *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), and when it is left uncorrected by the trial judge prejudice results. The judge may eliminate the prejudicial impact

Trial defense counsel pressed the matter no further, undoubtedly feeling secure that the instruction previously requested and implicitly promised by the trial judge's "very well" would be given and would obviate any consideration by the court members of appellant's silence being weighed by them against appellant in their deliberations on findings. *Cf. United States v. Nea*, 17 U.S. C.M.A. 363, 38 C.M.R. 161 (1968).

In instructing the court members on findings the trial judge totally omitted giving them the instruction concerning appellant's right to remain silent.

The competency of an accused to testify in a trial by court-martial is established by statute, and the statute, 18 U.S.C. § 3481, provides that the failure of an accused to request to become a witness shall not be considered against him:

> In trial of all persons charged with the commission of offenses against the United States and in all proceedings in courts-martial and courts of inquiry in any State, District, Possession or Territory, the person charged shall, at his own request, be a competent witness. His failure to make such request shall not create any presumption against him.

Not unlike 18 U.S.C. §§ 3481 the *Manual for Courts-Martial*, paragraph 148e, states:

> The accused is at his own request, but not otherwise, a competent witness. His failure to make such a request or to become a witness as to a particular offense charged will not create any inference against him.

In reversing a conviction because the trial court failed to give the jury an instruction that a defendant had the right not to testify and that his failure to testify would not be considered against him the United States Supreme Court, relying upon 18 U.S.C. § 3481, stated:

> of such improper comment by advising the court members that the accused has an absolute right to remain silent and directing them to completely disregard the impermissible argument. *United States v. Seay*, 13 U.S.C.M.A. 540, 33 C.M.R. 72 (1963).

"To the suggestion that it benefits a defendant who fails to take the stand not to have the attention of the jury directed to that fact, it suffices to say that, however difficult it may be to exercise enlightened self-interest, the accused should be allowed to make his own choice when an Act of Congress authorized him to choose. And when it is urged that it is a psychological impossibility not to have a presumption arise in the minds of jurors against an accused who fails to testify, the short answer is that Congress legislated on a contrary assumption and not without support in experience. It was for Congress to decide whether what it deemed legally significant was psychologically futile. Certainly, despite the vast accumulation of psychological data, we have not yet attained that certitude about the human mind which would justify us in disregarding the will of Congress by a dogmatic assumption that jurors, if properly admonished, neither could nor would heed the instructions of the trial court that the failure of an accused to be a witness in his own cause 'shall not create any presumption against him.' " *Bruno v. United States,* 308 U.S. 287, 294, 60 S.Ct. 198, 200, 84 L.Ed. 257 (1939). *Also see United States v. Farrington,* 14 U.S.C.M.A. 614, 34 C.M.R. 394 (1964); *United States v. King,* 12 U.S.C.M.A. 71, 30 C.M.R. 71 (1960).

In the instant case the record does not indicate whether the trial judge intended to give the defense requested instruction to the court members that they were not to consider appellant's silence against him and inadvertently omitted to so advise the court members during his findings' charge, or whether the judge decided not to so instruct the court members because he considered such a course of action to be in appellant's best interests. If it was for the latter reason, which would be consistent with the view he had expressed to trial defense counsel during the session on findings' instructions, his reasoning was inconsistent with *Bruno v. United States, supra.*

For almost a century the law has recognized that an accused might prefer to rely upon the presumption of innocence which the law gives to every accused and decline to become a witness in his own behalf because of his personal characteristics that may do him more harm than good although he be innocent:

"It is not everyone who can safely venture on the witness stand though entirely innocent of the charge against him. Excessive timidity, nervousness when facing others and attempting to explain transactions of a suspicious character, and offenses charged against him, will often confuse and embarrass him to such a degree as to increase rather than remove prejudices against him. It is not everyone, however honest, who would therefore willingly be placed on the witness stand. The statute [*i. e.,* the 1878 progenitor of 18 USC §§ 3481] in tenderness to the weakness of those who from the causes mentioned might refuse to ask to be a witness, particularly when they may have been in some degree compromised by their association with others, declares that the failure of a defendant in a criminal action to request to be a witness shall not create any presumption against him." *Wilson v. United States,* 149 U.S. 60, 66, 13 S.Ct. 765, 766, 37 L.Ed. 650, 651–652 (1893).

■ But, for whatever the reason an accused may decline to become a witness, he is entitled not to have his silence counted against him.

■ Appellant in the instant case had a statutory right to have the court members, who are not presumed to know the law and who must rely upon the military judge for the law they employ, *cf. United States v. Linder,* 6 U.S.C.M.A. 669, 674, 20 C.M.R. 385, 390 (1956), advised of his right to remain silent and informed that his failure to have testified was not to be considered against him during their findings' deliberations. Appellant made such a request but it was not honored.

From the record it cannot be concluded that appellant was not prejudiced because the judge did not give the requested in-

struction and that the court members' findings would have been the same had the instruction been given. Therefore, and not unlike the defendant in *United States v. Bruno, supra,* the appellant's conviction cannot be allowed to stand.[7]

Although at the convening authority level an opportunity was presented to take corrective action with respect to the prejudicially deficient instructions of the trial judge, no such action was taken. The convening authority was not informed by the post-trial advice of his staff judge advocate that the lesser offense of adultery was in issue with respect to the alleged crime of rape, nor was the convening authority informed of the prejudicial significance of the trial judge's omission of an instruction concerning appellant's right to remain silent. Had the convening authority been properly advised of these matters in the post-trial advice of his staff judge advocate, he undoubtedly would then have taken the corrective action now required in the interests of justice.[8]

The findings of guilty and the sentence are set aside and the record returned to the Judge Advocate General of the Navy for forwarding to the convening authority who may order a rehearing, or, if he deems that impracticable, dismiss the charges.

MURRAY, Senior Judge (concurring in the result):

While I agree with Judge Wray as to the prejudicial error committed by the trial judge in his instructions to the members, which omitted the essential instruction concerning the appellant's right to remain silent, I do not agree that adultery was an issue in this case which was raised to a level requiring instruction thereon as a lesser included offense of rape. Accordingly,

---

7. Informed judicial instructions reduce ultimate cost, improve efficiency, and enhance military justice. *United States v. Porter,* 3 M.L.R. 2613, 2614 (N.C.M.R.1975).

8. The convening authority did not have available a book of principles on military justice for convening authorities that would have been of assistance in this case.

while I depart from my brother Judge Wray on that aspect, I concur in the result in this case due to other instructional error.

CEDARBURG, Chief Judge (dissenting):

I dissent.

The principal opinion concludes, that because the evidence at trial peripherally and incidentally established that the victim of the alleged rape was married, and inferentially that appellant was aware of her married status, that adultery was raised as a lesser included offense, requiring instructions thereon by the military judge.

The *Manual for Courts-Martial, United States, 1969* (Revised edition) provides guidance for determining if a lesser offense is included within a charged offense. Paragraph 158 of the *Manual* states:

An included offense exists when a specification contains allegations, which are sufficient, either expressly or by fair implication, to put the accused on notice that he must be prepared to defend against it in addition to the offense specifically charged. This requirement of notice is met when the elements of the included offense are necessary elements of the offense charged, for example, wrongful appropriation where larceny is charged and absence without leave where desertion is charged. Also, this requirement of notice, depending on the allegations in the specification of the offense charged, may be met although an included offense requires proof of an element not required in the offense specifically charged, for example, assault in which grievous bodily harm is intentionally inflicted may be included in assault with intent to murder, although the actual intentional infliction of bodily harm required in the former is

---

Knowledge is the key to the prudent and meaningful exercise of power and such a consolidated book of principles on military justice for convening authorities would be a great benefit to them and, as well, to those providing them with legal advice within ". . . the carefully designed military justice system established by Congress." *Schlesinger v. Councilman,* 420 U.S. 738, 753, 95 S.Ct. 1300, 1310, 43 L.Ed.2d 591 (1975).

not an element of the latter. Similarly, unpremeditated murder (Art. 118(2)) may be included in felony murder (Art. 118(4)); assault with a dangerous weapon may be included in robbery; and riot may be included in mutiny by violence.

In the present case, the specification of Charge I incorporated the standard form specification appearing in the *Manual, supra*, Appendix 6c, A6–15. It alleges simply: "In that Fireman Apprentice Ronald S. Flinchbaugh, U. S. Navy, Naval Support Activity, Los Angeles-Long Beach, Long Beach, California, did at Naval Support Activity, Los Angeles-Long Beach, Long Beach, California on or about 12 September 1975, rape Ms. ___ ___ ___." There is no allegation within the specification, either expressly or by fair implication, which would put the accused on notice that he must be prepared to defend against a charge whose principal thrust is wholly different from the rape offense alleged.

Rape is a violent crime, predicated upon forceful, nonconsensual violation of a female. Adultery is nonviolent and consensual, bottomed upon a breach of the legally sanctioned institution of marriage. The marital status of either party involved in the act of sexual intercourse is immaterial to a proof of rape. It is, however, a vital and necessary element in proving an adultery charge. These are critical distinctions which render the gravamens of rape and adultery lacking in fundamental commonality.

Support for the distinct nature of these two offenses, which involves no greater to lesser included standing, is found in the *Manual*, Table of Commonly Included Offenses, Appendix 12, A12–4, which does not list adultery as a lesser included offense of rape. Although the listings in this table are not all-inclusive as to lesser included offenses, it is representative of the thought of the *Manual* drafters that adultery is not expressly or by fair implication raised by an allegation of rape. Beyond the *Manual* guidance, the issue has been specifically addressed by this Court, most recently in *United States v. Watkins,* 1 M.J. 1034 (N.C.M.R.1976), when the Judge Advocate General forwarded the case for review pursuant to Article 69, UCMJ, with attention invited to the issue of whether adultery was a lesser included offense of rape when the specification failed to set forth the marital status of the accused and victim. The certified question was answered in the negative. The court, in disposing of the issue, said, "Simply stated, the short form allegation of rape in the specification under consideration does not allege an essential element of the offense of adultery—that either or both parties to the offense were married, but not to each other. The specification fails to apprise the accused that he must be prepared to defend against the adultery charge." This Court's decision in *Watkins* is in accord with an earlier decision discussing the necessity to instruct on adultery as a lesser included offense of rape, decided by an Army Board of Review in *United States v. Nicholson, et al.,* 22 C.M.R. 402 (1956), *petition granted, limited to other issues,* 23 C.M.R. 418, *aff'd,* 8 U.S.C.M.A. 499, 25 C.M.R. 3 (1957). Citing singularly similar decisions from a number of state jurisdictions, the Army Board of Review held that adultery is not a lesser degree of and included within the offense of rape. *Id.* at 405. Beyond these cases directly in point, there exists a scarcity of military case law. *United States v. Melville, supra,* cited in the principal opinion, does not support the proposition that adultery is lesser included within a rape charge. Reason, the *Manual* and reported case law reject adultery as a lesser included offense of rape. There is no justification for this Court to hold otherwise.

I further register my disagreement with the majority conclusion that the omission by the military judge to give a defense requested instruction concerning appellant's right to remain silent requires the setting aside of the findings and sentence.

During a pre-findings Article 39(a) session on proposed instructions, the military judge, as quoted in the majority opinion, cautioned defense counsel that his request for an instruction on appellant's right to

remain silent was dangerous, highlighting the fact that appellant had not testified. In response to a question by the military judge as to whether he still wanted the instruction, the defense counsel stated, "Yes, sir"; to which the military judge replied, "Very well." At the conclusion of the Article 39(a) session, the request was still in effect, with an indication from the military judge that it would be granted. The requested instruction was not included in the instructions actually given to the court members. At the conclusion of his instructions, the military judge specifically asked, "Now, does either counsel have any desired instructions not previously given or do you have any objections to the instructions that I have given?" The defense counsel responded, "Your honor, I don't request any additional instructions. One minor objection as to . . . ." The military judge then asked defense counsel, "Are there any others?" [objections]; to which defense counsel responded, "No, sir."

The instruction on the right to remain silent was not one which the military judge was required to give *sua sponte*. Although the defense requested the instruction, prompting a discussion during the Article 39(a) session as to its advisability, apparently the request was not withdrawn. However, after omitting to give the instruction, for whatever reason, the military judge clearly and unequivocally asked both counsel if they desired instructions not previously given or had any objections to those given. The defense counsel, at that time, had not only the opportunity but the obligation to advise the military judge if the instruction on the right to remain silent was still desired, if that was still his position. He did, in fact, register an objection to one of the instructions as given, manifesting an awareness of the opportunity afforded him and an inclination to fulfill his obligation to obtain instructions he deemed necessary or desirable. An Article 39(a) session was available to him if further clarification outside of the hearing of the court members was deemed advisable.

While there was no articulated withdrawal of his request for the instruction, the defense counsel's failure to apprise the military judge of a continued desire for the instruction, if that was the case, and his failure to object to the omission when he was clearly given the opportunity, waives any right to object on appeal. The defense was given an opportunity to register objections to the instructions as given or renew a request for the omitted instruction. Objection at that time would have given the court ". . . the opportunity to correct an error [of omission] then and there, and thus avoid further costly proceedings." *United States v. Pinkney*, 22 U.S.C.M.A. 595, 598, 48 C.M.R. 219, 222 (1974). The trial judge could have neutralized any damage from his previous omission to instruct on a matter desired by the defense by their action in bringing it to his attention. Since knowledge of the omission of his own requested instruction was peculiarly within the province of the trial defense counsel, I conclude that when it was not given and he failed to respond to the military judge's solicitation of further instructions, it was "intentionally . . . left in dispute at the trial level in order to gain a tactical advantage either at trial or subsequently on appeal." *United States v. Heflin*, 22 U.S.C.M.A. 505, 507, 50 C.M.R. 644, 646, 1 M.J. 131, 133. I am convinced therefore, that under the posture of the present case, no substantial right of the appellant was prejudiced by the omission of the military judge of the requested instruction.

I would affirm the findings and sentence as approved on review below.