UNITED STATES, Appellee

v

CHARLES O. ARMISTEAD, Private First Class,
U. S. Army, Appellant

16 USCMA 217, 36 CMR 373

No. 19,107

April 29, 1966

*Captain Peter A. Anderson* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk* and *Lieutenant Colonel Martin S. Drucker.*

*Captain Richard J. Andriolo* argued the cause for Appellee, United States. With him on the brief were *Colonel Joseph J. Crimmins* and *Lieutenant Colonel Francis M. Cooper.*

QUINN, Chief Judge:

Charged with the unpremeditated murder of Private Phillip Graves by stabbing him in the stomach, the accused was convicted by a general court-martial in Bad Kreuznach, Germany, of voluntary manslaughter, in violation of Article 119, Uniform Code of Military Justice, 10 USC § 919, and sentenced to a dishonorable discharge, confinement at hard labor for eight years, and accessory punishments. A board of review affirmed the findings of guilty, but mitigated the sentence by reducing the confinement to three years.

The stabbing took place in a bar in Frankfurt, Germany. It was the culmination of a complaint by Graves to the accused as to the manner in which the accused had handled an earlier incident in another bar involving two German girls, one of whom the accused said "treated . . . [him] like a human being." Although, in his testimony at trial, the accused maintained, in part, he did not recall taking the knife from his pocket and did not "know what happened," the general tenor of his testimony was to the effect that he "got scared" when Graves and several others reproached him, in threatening terms, about the previous incident. At first, he was too "scared to even move . . . [his] hands," but when Graves pushed his head against the wall and started to strike him with his fists he pulled out the knife "because . . . [he] was scared and it was the last thing . . . [he] could think of." The accused admitted that after he left the bar he told one of the girls he " 'must have stabbed Graves, because . . . [he] looked down and . . . saw the knife in . . . [his] hand and . . . [he] saw blood on it.' " He insisted, however, he did not have any "intent to kill Graves or even stab him with that knife." Despite the latter denial by the accused, the evidence compellingly indicates he plunged his knife into Graves' stomach and severed the renal vein and aorta artery, causing Graves' death. On this appeal, the accused contends he was prejudiced by two statements in the law officer's instructions on self-defense.

Prior to instructing the court-martial, the law officer held an out-of-court hearing with counsel to consider his instructions. The self-defense issue engaged their attention for a considerable time. One of the statements attacked on this appeal "disturbed" defense counsel. He indicated that, as used in a proposed instruction, the phrase "the killing was necessary" might be "misleading," because the right to assert self-defense did not necessarily depend upon the accused's possession of an intent to kill. The law officer was of the opinion that defense counsel's doubt was unfounded. Actually, the challenged statement is only part of a sentence. It is so connected with what went before and what came after, that it cannot be fairly interpreted without considering the entire instruction. See United States v Ayers, 14 USCMA 336, 343, 34 CMR 116. The whole instruction, with the challenged part italicized, is as follows:

"The accused contends that, under all of these aforementioned and enumerated circumstances and other facts that you have heard in the case, he believed on reasonable grounds that there was danger of his being killed at the time or of receiving great bodily harm from Graves and that under these circumstances it was necessary for him to draw his knife and stab Graves to save his own life or to prevent great bodily harm to himself.

"On the other hand the Government's theory is that the accused murdered Graves and did not act in lawful self-defense. The Government by its evidence attempts to show that there was no lawful justification or lawful excuse on the part of the accused to have stabbed Graves under the circumstances. It attempted to show that the accused

disliked Graves and had stated, after Brown's alleged assault by Graves on an earlier occasion, that if Graves ever did anything to him he would kill Graves. In other words the Government's contention from all of the evidence is that at the time of the fatal stabbing the accused was not under a reasonable belief that he was in danger of being killed or of receiving great bodily harm and that it was not necessary to stab Graves under the circumstances.

. . . . . . . . .

"Now, the law respecting self-defense is as follows: A person unlawfully assaulted has the legal right to stand his ground and resist force with force. There is no rule of law which limits a defender to the use of force identical in kind or amount to that which is directed against him. He may in self-defense use such force as he believes on reasonable grounds to be necessary under all of the circumstances as they appeared to him at the time to prevent impending injury or bodily harm to himself; however, *a person may kill in lawful self-defense only if he believed on reasonable grounds that the killing was necessary to either save his own life or to prevent great bodily harm to himself and furthermore if he believed that this danger to himself was imminent.* Although whether or not he was in actual imminent danger of his life or great bodily harm is of course a factor to be considered by you in determining whether he believed on reasonable grounds to be so in danger, it is not conclusive as to his belief or its reasonableness. In other words it is not necessary to this defense that the accused's danger should have been real or actual or that it should have been impending or about to occur. It is sufficient if the accused had reasonable grounds to believe from all the facts and circumstances as they appeared to him at the time that he was in such imminent danger." [Emphasis supplied.]

Appellate defense counsel contend that, in acting in self-defense, one need not believe that killing his attacker is necessary; instead, he need believe only that the force he brings to bear is needed to repel the assault made upon him. If the force used by the accused unexpectedly results in death, he is still entitled to be excused from the result on the basis of self-defense. The contention is sound. United States v Gordon, 14 USCMA 314, 34 CMR 94. It does not, however, follow that the instruction in this case is prejudicially erroneous. Contrary to appellate defense counsel's contention, we have not "expressed dissatisfaction with this form of instruction." Rather, we have pointed out it is appropriate where the evidence indicates that the death of the accused's purported assailant was an "intentional killing." The instruction is improper only when the evidence negates an "intentional killing" and indicates the accused only used more force than he believed was necessary to save his life or protect himself from serious bodily harm. United States v Weems, 3 USCMA 469, 13 CMR 25. In this case, the accused's testimony reflects both situations.

As noted, the accused denied an intention to kill Graves. However, he also made statements which, in conjunction with the other evidence, would support a finding that Graves' death was "an intentional killing." In any event, here, as in United States v Gordon, supra, the instructions as a whole could not mislead the court as to the accused's right to stab Graves to save his own life or prevent grievous bodily harm to himself, without regard to whether he directly and specifically intended Graves' death. Consequently, the law officer's reference to the accused's belief that "the killing was necessary" does not justify reversal of the conviction.

At the outset of the hearing on the instructions, the law officer indicated he was interested in "personalizing the instructions" as much as possible. He extensively reviewed with counsel various special situations, and the desirability of instructing thereon. Al-

219

though his counsel expressed agreement with the final draft, the accused now contends that part of the instruction on the degree of force that can be used to resist an attack was meaningless and unrelated to the evidence in the case. See United States v Smith, 13 USCMA 471, 33 CMR 3. The assignment of error centers on the italicized part of the following instruction:

"Now, this legal right of self-defense exists only for the benefit of one who is the object of an unlawful assault. In other words self-defense is limited to defensive action and not offensive action. To avail himself of the right of self-defense, the person must not have been the aggressor or intentionally provoked the altercation with the victim, and the degree of force employed by the accused in repelling the assault must not have exceeded that degree of force which the accused honestly and reasonably believed from all of the facts and circumstances as they appeared to him to be necessary to protect himself from imminent danger of death or great bodily harm; *therefore, if a person uses more force in the defense of his person than the law allows, that is, if he exceeds the bounds of lawful self-defense, he becomes the aggressor and cannot then claim to have acted in lawful self-defense.*

"Now, the circumstances may be such in a particular case as to justify a person using a weapon or a knife to repel an attack upon his person even though the assaulting party is unarmed and commits the assault by means of his fists. In other words the law does not require an accused to stand and take his chances of being knocked down and stomped into jelly before he can lawfully use a weapon in his defense. In considering whether the accused resorted to excessive force by the use of a knife, the court should consider the relative physical proportions of the parties involved in this case, the disparity in the size and the numbers of the parties in this case, the pounding or the striking of the head of the accused against the wall, as well as all the other evidence in the case." [Emphasis supplied.]

Standing alone, the passage challenged by the accused lacks clarity. Without further explanation, court members can hardly be expected to know how much force "the law allows" for "lawful self-defense.". Without more they would indeed have "to pilot themselves willy-nilly" to an untutored conclusion. United States v Moore, 15 USCMA 187, 198, 35 CMR 159. But, the phrase under attack does not stand alone. It is only a small part of a long instruction on the subject. The remainder of the instruction makes crystal clear the degree of force the law allows in the exercise of self-defense. United States v Vaughn, 15 USCMA 622, 627, 36 CMR 120.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.