UNITED STATES, Appellee,

v.

**Staff Sergeant Marcellus C. FERGUSON, U.S. Air Force, Appellant.**

No. 41,590.

ACM 22865.

U. S. Court of Military Appeals.

Feb. 14, 1983.

For Appellant: *Captain Richard A. Morgan* (argued); *Colonel George R. Stevens* (on brief).

For Appellee: *Major Michael J. Hoover* (argued); *Colonel James P. Porter* (on brief).

### Opinion

FLETCHER, Judge:

Appellant was charged with the premeditated murder of his wife "by shooting her with a shotgun in the back," in violation of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918. He pleaded not guilty to this charge and a trial on the merits ensued. The members of his general court-martial found him guilty of murder without premeditation by shooting his wife with a shotgun in the back, in violation of Article 118. In May of 1980 he was sentenced to a bad-conduct discharge, 10 years' confinement at hard labor, and reduction to the lowest enlisted grade. The convening authority approved this sentence and the United States Air Force Court of Military Review affirmed without opinion.

Review was granted on the following issues of law:

#### I

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY REFUSING TO ALLOW THE TESTIMONY OF MASTER SERGEANT MACK REGARDING STATEMENTS OF THE APPELLANT TENDING TO SHOW A CONSCIOUSNESS OF INNOCENCE.

## II

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY REFUSING TO INSTRUCT ON THE DEFENSE OF ACCIDENT.

Resolution of both these issues does not require this Court to find facts, but it is necessary to examine the record of trial for evidence introduced by the parties bearing on these questions. After conducting such an examination, we hold that both questions must be answered in favor of the Government.

## I

The first question in this case is whether the military judge erred in refusing to admit testimony from a defense witness concerning an out-of-court statement made by appellant. Article 39(a)(4), UCMJ, 10 U.S.C. § 839(a)(4). The defense requested that Sergeant Mack be allowed to testify that appellant told him that the death of Mrs. Octavia Ferguson was an accident. There is no factual dispute that this conversation took place five days after appellant's arrest for the charged offense and while he was in pretrial confinement. Both parties also agree that Sergeant Mack was a close personal friend of appellant who was assisting him with his family during this turbulent period. The defense further made an offer of proof that Sergeant Mack believed appellant was sincere in making this statement. The military judge denied the defense request.

Defense counsel argued that there were several evidentiary theories which would justify admission of Sergeant Mack's testimony concerning the out-of-court statement of appellant. He first asserted that this testimony was admissible because it embraced a spontaneous exclamation made by

appellant to Sergeant Mack. *See* para. 142 *b,* Manual for Courts-Martial, United States, 1969 (Revised edition). Then, he asserted that this testimony was admissible because it contained evidence of appellant's state of mind. *See* para. 142*d,* Manual, *supra.* Finally, he particularized his second theory by asking the military judge to consider that portion of paragraph 142*d* concerning admissibility of evidence of statements of an accused tending to show a consciousness of innocence.

■ In addressing the granted issue, we note that if the defense intended to use the proffered testimony to prove the truth of the assertion contained therein, *i.e.,* the wife's death was an accident, it was hearsay. Para. 139*a,* Manual, *supra.* The spontaneous exclamation exception to the hearsay rule provided in paragraph 142*b,* Manual, *supra,* would permit admission of this testimony for this purpose. The military judge, however, ruled that this testimony did not meet the requirements of this exception to the hearsay rule and accordingly it was inadmissible for this purpose. This ruling is not the subject of review in the present case and we do not find it plainly erroneous.

■ A second evidentiary theory was proffered by the defense to support admission of Sergeant Mack's testimony concerning appellant's out-of-court statement. Defense counsel stated that he intended to use this testimony to show appellant's state of mind five days after the death of his wife. *See McCormick's Handbook On the Law of Evidence* §§ 249, 294 (2d ed. 1972) [hereafter cited as McCormick].[1] This testimony would still be hearsay if used for this purpose. Its value as to appellant's state of mind is dependent on the credibility of the out-of-court declarant and the truth of his assertion. *See* para. 142*d,* Manual, *supra;*

---

1. Defense counsel initially asserted that the out-of-court statement of appellant was being offered to show the "motive, intent, or state of mind of Sergeant Ferguson as to what really happened." He asserted that it had "probative value because the accused is the one who faces whatever adverse consequences this court may decide to mete out." As pointed out by Chief

Judge Everett, otherwise inadmissible hearsay statements showing a person's memory as to a past intent are not admissible at a court-martial to show the remembered intent. Para. 142*d,* Manual for Courts-Martial, United States, 1969 (Revised edition); 6 J. Wigmore, *Evidence* § 1732(4) (Chadbourne rev. 1976).

McCormick, *supra.* In other words, the mere fact that appellant said his wife's death was an accident provides no inference as to his state of mind unless one also accepts the fact that he was speaking truthfully. *See* 2 J. Wigmore, *Evidence* § 267 (3d ed. 1940).

In order for the military judge to admit this testimony for this evidentiary purpose, it was first necessary to determine whether the state of mind of appellant five days after the alleged offense was a relevant issue in this case. *See* paras. 142*d* and 137, Manual, *supra.* Defense counsel further particularized his purpose in introducing this testimony by indicating that he intended to show that appellant had a consciousness of innocence after the offense, and this fact was relevant to the issue of his guilt of the charged offense. Para. 142*d*, Manual, *supra;* 1 Wigmore, *Evidence* §§ 172–74 (3d ed. 1940); 2 Wigmore, *supra* at § 293. The military judge did not indicate that he disagreed that this fact was probative as to the issue of appellant's guilt of the charged offense.[2]

The second question the military judge had to decide was whether appellant's out-of-court statement had a tendency to disclose his state of mind as being conscious of his innocence. Paragraph 142*d*, Manual, *supra,* provides that such a state of mind on the part of an accused can be shown by statements made by him after the offense. Moreover, his statement that his wife's death was an accident can be reasonably construed as an assertion on his part that he then believed himself innocent of the charged offense. *See generally* McCormick, *supra* at §§ 249 and 294. Again the military judge did not disagree that this statement provided a reasonable inference that five days after the offense appellant believed himself innocent.

■ The third question confronting the military judge was whether the out-of-court statement of appellant was made under circumstances of probable sincerity. *See* McCormick, *supra* at § 294; 2 Wigmore, *supra* at § 293. Paragraph 142*d*, Manual states: "Evidence of statements of the accused, *not made under circumstances indicative of insincerity,* tending to show a consciousness of innocence is also admissible." (Emphasis added.) This Manual provision reflects the concern of the President that a judicial ruling be made to insure that feigned or artificial conduct or statements not be used as a basis for an inference concerning the accused's consciousness of innocence. *See* 2 Wigmore, *supra* at § 273. It was on this basis that the military judge ruled the testimony of Sergeant Mack inadmissible.[3]

The military judge, as indicated earlier, denied defense counsel's request to permit Sergeant Mack to testify as to the out-of-court declaration of appellant. He stated:

> Gentlemen, I am convinced by the circumstances contained in the proffer of proof made by the defense that neither of these exceptions to the hearsay rule would apply to the statement made by the accused to Sergeant Mack. I would therefore, rule that the statement is hearsay and would not be admissible. I am

2. Paragraph 142*d*, Manual, *supra,* does not state the reason why a consciousness of innocence on the part of an accused is a fact, if established, which is probative on the issue of his guilt of a charged offense. Wigmore suggests that such a state of mind has evidential value because it provides a basis for a retrospective inference that an accused is not the perpetrator or doer of the charged act. 1 J. Wigmore, *Evidence* §§ 148–149, 172–74 (3d ed. 1940). The Government in this case introduced evidence that appellant intentionally shot his wife. The defense apparently intended to show that appellant's wife shot herself by accidentally causing the discharge of the shotgun held by her husband. For purposes of this appeal, we assume a question existed in this case as to the identity of appellant as the doer of the charged act.

3. The defense implies that the evidentiary rule provided in 2 J. Wigmore, *Evidence* § 293 (3d ed. 1940), may be broader than that adopted by the President in paragraph 142*d*, Manual, *supra.* While such a suggestion has merit, it does not change our resolution of this case in the military justice system. *United States v. Smith,* 13 U.S.C.M.A. 105, 32 C.M.R. 105 (1962). *See* para. 142*d*, Analysis of Contents, Manual for Courts-Martial, United States, 1969 (Revised edition).

satisfied that neither of the two grounds—that neither of the two exceptions cited by the defense would be applicable to make this admissible.

Prior to this evidentiary ruling, defense counsel particularly brought to his attention that portion of paragraph 142*d*, Manual, *supra*, which permitted the introduction of "[e]vidence of statements of the accused, not made under circumstances indicative of insincerity." It is clear from the above that the military judge found that this out-of-court statement was not shown to have been made under circumstances of probable sincerity.

█ Turning to the record of trial before us, we note that there was some evidence that appellant's statement was made under circumstances not indicative of insincerity. First, the statement was made to a close friend of appellant during a conversation altruistic in nature and unrelated to any official criminal investigation directed against him. Second, the defense offered to show that the defense witness, Sergeant Mack, a person who personally knew appellant, believed he was sincere in his statements. On the other hand, the statement was made by appellant after he was arrested for this offense and while he was in pretrial confinement. Although no immutable principle of law is applicable to these circumstances, we hold the military judge had reason to find the defense failed to meet its burden of proof on this question and no error of law occurred in his decision not to admit this testimony for this purpose. *See United States v. Lowry*, 2 M.J. 55 (C.M.A.1976).

█ A final point in deciding the first granted issue is whether the testimony of Sergeant Mack should have been admitted for the reasons stated in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). *See United States v. Johnson*, 3 M.J. 143 (C.M.A.1977). In general, these cases may be cited for the proposition that the hearsay rules of a particular jurisdiction cannot be mechanistically applied in every case to exclude probative evidence tending to show an accused is not guilty of the charged offense. U.S. Const. amends. V and XIV. We do not believe these decisions dictate admission of Sergeant Mack's testimony in the present case.

In *Chambers v. Mississippi* and *United States v. Johnson*, both *supra*, the defense sought to introduce in hearsay form evidence that a third party confessed to the crime charged against the accused. Such evidence was considered critical to the accused's defense. *See Chambers v. Mississippi, supra*, 410 U.S. at 301–03, 93 S.Ct. at 1048–50, *citing United States v. Harris*, 403 U.S. 573, 583–84, 91 S.Ct. 2075, 2081–82, 29 L.Ed.2d 723 (1971). The defense in the present case sought to introduce in hearsay form a statement from the accused tending to show his consciousness of innocence. Even Dean Wigmore, a major proponent of the introduction of such evidence, concedes it is not to be treated as evidence of much value. 2 Wigmore, *supra* at § 293.

In addition, in *Chambers v. Mississippi* and *United States v. Johnson*, both *supra*, this evidence was admitted despite the absence of an evidentiary rule permitting its introduction in the jurisdiction involved. The evidence was found to bear persuasive assurances of trustworthiness overlooked by the trial judge. Here, an evidentiary rule would have permitted introduction of the evidence but the trial judge found the circumstances surrounding the making of the out-of-court statement to be indicative of insincerity. In such a situation, appellant was not denied a fair trial in the sense intended in *Chambers v. Mississippi* and *United States v. Johnson*, both *supra*.

## II

The second granted issue in this case is whether appellant was prejudiced by the failure of the military judge to give an instruction on the defense of accident as requested by defense counsel. *See paras.* 73*a*, 214, and 216*b*, Manual, *supra*. As indicated earlier, appellant was charged with the premeditated murder of his wife by shooting her with a shotgun in the back. Article 118(1). The members of this court-martial found appellant guilty of the un-

premeditated murder of his wife, in violation of Article 118. The military judge had earlier instructed the members that if they did not find that appellant acted with a premeditated design to kill, they could still find appellant guilty of unpremeditated murder if they found appellant acted with an intent to kill or inflict great bodily harm on his wife. Article 118(2). As a starting point, it should be noted that the defense of accident, if found to exist by the members, would have excused appellant from criminal liability on the above charges. *See* para. 216*b*, Manual, *supra*. *See also* Clark and Marshall, *A Treatise on the Law of Crimes* § 7.02 (7th ed. 1967); W. Winthrop, *Military Law and Precedents* § 1044 (2d ed. 1920 Reprint).

■■■ The lead question is whether there was evidence presented at this court-martial to which the members might attach credit which would raise the defense of accident. *See* para. 214, Manual, *supra*. Even if it is raised only by the testimony of appellant, an instruction on accident would be required. *See United States v. Tucker,* 17 U.S.C.M.A. 551, 554–55, 38 C.M.R. 349, 352–53 (1968). However, if the defense involves several elements of proof, the record must contain some evidence on each of these elements before the military judge is required to instruct the members on it.

■■■ Paragraph 216*b*, Manual, *supra*, states:

*Excuse: Accident or misadventure.* A death, injury, or other event which occurs as the result of an accident or misadventure in doing a lawful act in a lawful manner is excusable.

This Court and others have generally held that this defense involves three elements of proof. First, evidence must be introduced that the accused was engaged in an act not prohibited by law, regulation, or order. *See United States v. Perry,* 16 U.S.C.M.A. 221, 36 C.M.R. 377 (1966); *United States v. Sandoval,* 4 U.S.C.M.A. 61, 67, 15 C.M.R. 61, 67 (1954). Second, this lawful act must be shown by some evidence to have been performed in a lawful manner, *i.e.*, with due care and without simple negligence. *See*

*United States v. Tucker, supra; United States v. Redding,* 14 U.S.C.M.A. 242, 34 C.M.R. 22 (1963). Third, there must be some evidence in the record of trial that this act was done without any unlawful intent. *See United States v. Femmer,* 14 U.S.C.M.A. 358, 34 C.M.R. 138 (1964).

On appeal before this Court, appellant summarized his testimony at trial as follows:

The appellant testified in his own behalf. He stated that on the night in question his wife went out allegedly to play cards with some friends. Later that evening Staff Sergeant Ferguson also went out for awhile, returning at 2330 hours. Upon finding that his wife had not yet returned, the appellant decided to go out again to "give her a taste of her own medicine . . . that she had been leaving me at home by myself." He returned home at approximately 0135 hours. He was confronted by his wife at that time, she was waiving [sic] a knife around, pushing the appellant, and shouting at him. At one point, the victim reached for the appellant and tore his shirt. He further testified that, at that time, he did not think that his wife was actually going to stab him with the knife, although she appeared to be pretty upset and had had too much to drink. Some pushing back and forth ensued and the parties fell to the floor. When the appellant arose, he saw blood on the floor and subsequently determined that he had been cut in the back. He decided to go to the hospital; however, before he could depart, his wife came at him with the knife again. At this point, the appellant went to the bedroom and got his shotgun because ". . . I wasn't going to let her cut me any more. . . ." While his wife continued to threaten and shout, the appellant pushed her out of the way, went downstairs to the garage where he got some shells, and returned. Upon returning, the appellant noted that his wife was on the telephone. He loaded one round into the shotgun, took the phone away from her, "brushed her" and motioned her to sit down to talk

about the situation and shutup. Mrs. Ferguson either fell or sat on the floor and began to holler, still possessing the knife. The gun was pointing at Mrs. Ferguson and she immediately grabbed the barrel. The appellant told her if she put the knife down, he would put the gun down. Instead, Mrs. Ferguson began jerking the gun—pulling it back and forth—until the weapon discharged, killing her.

This evidentiary summary, although accurate and accepted by the Government, is not complete. Appellant also answered some questions asked by the military judge on behalf of a court member. Para. 149*b* (3), Manual, *supra*. The record reads as follows:

[MJ:] This question is from Appellate Exhibit L, by Lieutenant Elmore. Sergeant Ferguson, you have testified about your handling of the shotgun, I would like to call your attention in particular to the time after you had acquired the shotgun shells in the basement and you were coming up the stairs.

A. Yes, sir.

Q. I believe your testimony is that somewhere on the stairs you placed a round into the chamber of the shotgun, is that correct?

A. Yes, sir.

Q. Did you place the safety on?

A. No, sir.

Q. Why didn't you?

A. I didn't check the weapon to see if it was on or—

Q. Do you know whether the safety was on or not?

A. No, sir. I don't know.

Q. How long have you owned that weapon?

A. About two years. I think about two years.

Q. How many times have you handled the gun in just an estimate?

A. Maybe about ten times.

Q. Did you know where the safety was?

A. Yes, sir.

Q. Did you know how to operate the safety?

A. Yes, sir.

Moreover, earlier in the trial, a firearms expert testified as to his examination of the shotgun involved in the death of Mrs. Ferguson. A portion of his testimony is as follows:

MJ: Is there any objection to his being recognized by the court as an expert witness?

IDC: None whatsoever, Your Honor.

MJ: Very well. The court will recognize Mister Boehm as an expert in the field of firearms and toolmarks.

TC: Thank you. Sir, could you tell us a little bit about what you learned concerning the shotgun?

WIT: Do you want me to go through exactly what the weapon is?

TC: Please.

WIT: Quite a few of you are already familiar with it. It's a typical pump 12 gauge shotgun. This is a serial brand Ted Williams. The company that makes it is Winchester. This is a model 200 in the Ted Williams, if it was a Winchester brand as stated on the barrel it would be the 1300 XTR. When I say, pump, as you can see when I do like this (witness pumped the gun), in order to pull down on the forearm, it comes back and we have what we call a breech block here (witness pointed to lower part of gun), which when you bring the weapon back it cocks the weapon and as you go forward it enters a round in the chamber and it's ready to fire. You *have manual safety, which is a crossbar type of safety, a crossbolt if you will, which is here* (witness pointed in the area of the stock), *the weapon will not fire.* Some of you probably already know but down here is a little button that I'm pushing (witness pointed to an area by the trigger). As you see when I push this button it's releasing that forearm. What this is for is when a shot shell is in the chamber and it is cocked and ready to shoot, it's not coming open. So, if you want

to open it at this point you have to press the button to release this and you're ready to open it back up again.

(Emphasis added.)

Then later he said:

WIT: The gun, if it was ready to shoot now, if I was to click it and it was to fire as you can see it is ready to start open again. It's very easy, it comes open and it's ready to chamber another shell. Once the weapon has been fired you don't need to press the button, it will open up and you can cock it again. Basically, that's what it amounts to.

TC: As far as chambering a new shell, is that an automatic thing or does that have to be done manually?

A. No, this would be manual and if I may, I do have some inert shot shells with me that I have made—standard shot shells that I have made inert and may I please use those to demonstrate that?

TC: With the court's permission.

MJ: Yes, you may do that.

WIT: This weapon, as I received it, is the magazine capacity—that is the magazine here (witness pointed to the center of the gun), will hold two in the magazine and one in the chamber. The reason for that is there is a plug in here. You take out the plug and the capacity of the weapon would be five rounds including one in the chamber. The normal loading—I have to make sure I don't point this at anybody, as you can see I have taken all the powder out of these so that they cannot be fired (witness is referring to the inert shot shells), the normal loading if somebody were to stick one in like so (witness loaded gun with one inert shell), possibly two depending on how many you wanted in it, you press the button and it is now ready to be fired. You put it on safe and you can put in the other shot shells. You now have the magazine fully loaded and the gun is ready to fire. Now, a lot of people when they want to unload it, would do one of these (witness cocked the gun) and of course, another one would go in and you keep doing this through all three. A little bit safer, I just like to reach in and press this little latch (witness pointed to area by stock) and it will allow it to come out. If you wanted to load it singly, I can't feature anybody wanting to do this, I do it in my tests sometimes depending on the marks I want, but you could through the ejection port here (witness indicated an area on the stock) just place a shot shell in there and it would be ready to go.

Q. Did you examine the weapon for functioning ability?

A. *Yes, sir. It is in normal operating condition and the safety is functioning properly. No problem.*

Q. Were there any defects in it in any way?

A. No, sir. None that I could find in the tests that I did.

Q. *How about the safety, does that work?*

A. *Yes, sir. It's working fine.* I ran tests if you would like me to explain what the tests were?

Q. Yes.

(Emphasis added.) A government witness also testified that appellant used this shotgun when they went hunting on numerous occasions. Appellant testified that everything that night was happening pretty fast but he did not state or imply that this was the reason that he failed to check or place the safety in operation. He further testified that he purposely loaded the shotgun in his wife's view to place her in apprehension.

Examination of the evidence of record in this case leads to a single critical question as to appellant's request for an instruction on the defense of accident: Is there evidence in the record showing that appellant acted with due care in brandishing a loaded shotgun in his wife's face without checking the safety mechanism or placing it in operation? *See United States v. Tucker, supra.* This question assumes, for purposes of this discussion, there was evidence in the record that appellant was acting in self-defense

when he grabbed his shotgun, went downstairs to load it, and returned to confront his wife. *See United States v. Perry, supra; United States v. Moore,* 15 U.S.C.M.A. 187, 35 C.M.R. 159 (1964); *United States v. Smith,* 13 U.S.C.M.A. 471, 33 C.M.R. 3 (1963); *United States v. Acosta-Vargas,* 13 U.S.C.M.A. 388, 32 C.M.R. 388 (1962). It similarly assumes the validity of appellant's statement that he did not intend to fire the shotgun at his wife at any time.

 In addressing this question, it must be noted that appellant, in his testimony at trial, characterized the death of his wife as an accident. Such a categorization is not alone sufficient to raise the defense of accident. *See United States v. Redding, supra* at 246, 34 C.M.R. at 26. Admittedly, he did not expressly concede that he acted carelessly in failing to set the safety of the shotgun or even check if it was set. *Cf. United States v. Redding, supra.* Yet, the particulars of his testimony on this question and that of the firearms expert conclusively establish that his omissions were careless, especially when done in the presence of another. *See United States v. Sandoval, supra; see also United States v. Fletcher,* 13 C.M.R. 165 (A.B.R.1953). Unlike the situation in *United States v. Tucker, supra,* one would be hard pressed to find that there was any evidence presented in this case from which a jury could conclude that appellant acted without simple negligence.[4]

A more important reason exists why appellant was not prejudiced by the failure of the military judge to instruct on the defense of accident as requested by his defense counsel. Article 59(a), UCMJ, 10 U.S.C. § 859(a). It was uncontroverted in the present case that appellant intentionally pointed the loaded shotgun at his wife in order to place her in a state of fear or apprehension. *Cf. United States v. Tucker, supra* at 554, 38 C.M.R. at 352. The defense

argued that appellant was acting in self-defense at that time. *See* para. 216c, Manual, *supra.* The Government on the other hand argued that appellant was committing a felonious assault on his wife. *See* Article 128, UCMJ, 10 U.S.C. § 928. In this situation, appellant was not entitled to an instruction on accident as provided in paragraph 216b, Manual, *supra,* but rather an instruction on unexpected death resulting from permissible self-defense as provided in paragraph 216c, Manual, *supra. See* Clark, *supra;* 40 C.J.S. Homicide § 112c.

Prior to 1969, an instruction of this nature was characterized as an accident instruction, *United States v. Perry, supra;* a self-defense instruction—*United States v. Armistead,* 16 U.S.C.M.A. 217, 36 C.M.R. 373 (1966); *United States v. Gordon,* 14 U.S.C.M.A. 314, 34 C.M.R. 94 (1963)—or an amalgamation of the two, *United States v. Weems,* 3 U.S.C.M.A. 469, 13 C.M.R. 25 (1953). In 1969, however, the President in paragraph 216c of the Manual characterized this excuse as permissible self-defense with unexpected results. *See* para. 216c, Analysis of Contents, Manual for Courts-Martial, United States, 1969 (Revised edition). This provision states:

> When there is reasonable ground for the apprehension of an injury less than death or grievous bodily harm, the accused is entitled to use such force as he believes necessary to defend against this injury so long as this force is less than that which can reasonably be thought likely to produce grievous bodily harm or death. *If, in using this lesser degree of force, an unintentional death results which would not have been reasonably anticipated, this death is excusable.* The issue is whether, had the victim not died as a result of the encounter, the accused would be amenable to punishment for assault and battery.

---

4. The military judge did instruct the members on the lesser included offense of negligent homicide, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. *See United States v. Kick,* 7 M.J. 82 (C.M.A.1979). This instruction was proper because there was evidence of simple negligence in the case. Article 51(c)(3), UCMJ, 10 U.S.C. § 851(c)(3). Appellant however, would only be entitled to an instruction on the defense of accident if some evidence was admitted in this case showing that he acted without simple negligence. *See United States v. Tucker,* 17 U.S.C.M.A. 551, 38 C.M.R. 349 (1968).

(Emphasis added.) *See* para. 4–10c, AFM 111–2, Court-Martial Instructions Guide (October 15, 1971).

Turning to the record of trial, it is clear that the military judge gave instructions on self-defense in accordance with this provision. More importantly, these instructions were tailored to the evidence in this case in the manner requested by defense counsel.[5] Admittedly, the word "accident" was not used by the military judge, but it is difficult to see how the words "unexpected death" could possibly have inured to appellant's detriment. *Cf. United States v. Torres-Diaz,* 15 U.S.C.M.A. 472, 35 C.M.R. 444 (1965). In this case, the military judge instructed the members on two theories of self-defense. He instructed on self-defense with deadly force which intentionally results in death and self-defense with less than deadly force which unexpectedly results in death. There was no confusion in these instructions. *Cf. United States v. Thomas,* 11 M.J. 315 (C.M.A.1981); *United States v. Jones,* 3 M.J. 279 (C.M.A.1977).

The decision of the United States Air Force Court of Military Review is affirmed.

### APPENDIX A

### PROPOSED

### INSTRUCTION

Now in evaluating whether SSgt Ferguson was performing a lawful act in a lawful manner when, according to his testimony, he obtained and loaded his shotgun in self defense to repel, deter, and discourage Octavia Ferguson by pointing the shotgun at her, you may consider that any person assaulted may stand his ground and resist force with force. He may not use such force as to become an aggressor, but he is not limited to the exercise of precisely identical force or the degree thereof as is asserted against him and he may employ such not inordinate means as he believes on reasonable grounds necessary for protection against the impending harm under the circumstanc-

es. A person assaulted has the right to exercise such force as may honestly and reasonably appear to him, under all the circumstances, necessary to protect himself from bodily harm even though he may not actually have been in danger of bodily harm. In addition, one may, without forfeiting his right to defend himself against an attack, seek an interview with another in a peaceable manner, for the purpose of demanding an explaination of offensive words or conduct, and he need not go in a friendly spirit. He may assert self defense as an excuse even though he arms himself before seeking the interview. Also, for the purpose of *deterring, frightening,* or *discouraging* an assailant, one may threaten to resort to more force than he is legally entitled to actually use under the circumstances. Further, a person is not required to retreat when he is at a place where he has right to be and the law does not demand detached reflection under pressure of a violent attack or in a fast moving situation, and the accused is not required to pause at his peril to evaluate the degree of his danger or the degree of force required to repel it.

Since there is evidence of accident before the court, the burden is on the prosecution to establish beyond a reasonable doubt that the death of Octavia Ferguson was not the result of accident. Thus, unless you are satisfied beyond a reasonable doubt that the death of Octavia Ferguson was not the result of accident, you must acquit SSgt Ferguson of the offense of premeditated murder and all lesser included offenses.

EVERETT, Chief Judge (concurring in the result):

I concur in the result announced by Judge Fletcher in his opinion, but I write separately to set forth my analysis of the two issues in this case.

### I

As the principal opinion notes, trial defense counsel relied on two evidentiary bas-

---

5. In supplementing his request for an instruction on the defense of accident, defense counsel

submitted the proposed instructions contained in appendix A to this opinion.

es for admission of Sergeant Mack's testimony that five days after the death of appellant's wife, appellant told Mack that the death had been an accident.[1] First, counsel argued that the statement was a spontaneous exclamation made by appellant to Mack. *See* para. 142*b*, Manual for Courts-Martial, United States, 1969 (Revised edition). Alternatively, the defense contended that the statement was admissible to indicate appellant's state of mind— especially since it reflected appellant's consciousness of innocence. *See* para. 142*d*, Manual, *supra*. I conclude, however, that under the facts of this case neither of these recognized exceptions to the hearsay rule[2] applies and that, accordingly, the out-of-court statement was inadmissible under that rule.[3]

### A

Paragraph 142*b* of the 1969 Manual declares:

> An utterance concerning the circumstances of a startling event made by a person *while he was in such a condition of excitement, shock, or surprise,* caused by his participation in or observation of the event, as to warrant a reasonable inference that he made the utterance as an impulsive and instinctive outcome of the event, and not as a result of deliberation or design, is admissible as an exception to the hearsay rule to prove the truth of the matters stated.

(Emphasis added). While the subsequent Manual discussion recognizes that a lapse of time between the startling event and the utterance will not necessarily render the utterance inadmissible, this is so only if, when he spoke, the declarant was still in a condition of excitement, shock, or surprise caused by his participation in or observation of the event. Clearly, the burden falls on the proponent of the evidence to show that at the time of the utterance, the declarant possessed such a state of mind and this burden becomes more difficult as the lapse of time increases between the event and the utterance.

Mil.R.Evid. 803(1) and (2) contain exceptions "similar" to the "spontaneous exclamation" exception in paragraph 142*b*. *See* drafters' *Analysis*, 8 M.J. CCVII. Mil.R. Evid. 803(1)—"*Present sense impression*"— excludes from the hearsay rule "[a] statement describing or explaining an event or condition *made while the declarant was perceiving the event or condition or immediately thereafter.*" (Emphasis added). While a statement like the one appellant made to Sergeant Mack might be encompassed by this rule if it were made contemporaneously with the startling event, I doubt that this hearsay exception contemplates a statement made five days later. Indeed, while the authors of the *Military Rules of Evidence Manual* recognize that "[t]he term 'immediately thereafter' is not [specifically] defined in the Rule or its drafters' *Analysis*," they acknowledge that

> [t]o avoid undue extension of this exception, we believe that a statement must be made as soon as the opportunity to speak

---

1. If the evidence does not raise the possibility that appellant killed his wife while performing a lawful act in a lawful manner and, therefore, if appellant was not entitled to an accident instruction, as the principal opinion concludes, appellant could not have been prejudiced by the exclusion of Sergeant Mack's testimony. However, since I am not convinced of the absence of evidence raising this possibility, *see* Part II of this opinion, I prefer to resolve the first issue in a different way.

2. Paragraph 139*a*, Manual for Courts-Martial, United States, 1969 (Revised edition), in effect at the time of appellant's trial, provided:
 A statement which is offered in evidence to prove the truth of the matters stated therein, but which was not made by the author when

a witness before the court at the hearing in which it is so offered, is hearsay.
Mil.R.Evid. 801(c) similarly defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

3. With certain exceptions, *see* paras. 140–146, Manual, *supra*, paragraph 139*a* of the Manual prescribed, "Hearsay may not be recited or otherwise introduced in evidence." With similar specific exceptions, *see* Mil.R.Evid. 803 and 804, the Military Rules of Evidence likewise make such out-of-court statements inadmissible. *See* Mil.R.Evid. 802.

arises. *See Wolfson v. Mutual Life Insurance Co. of New York*, 455 F.Supp. 82 (M.D.Pa.), *aff'd*, 588 F.2d 825 (3d Cir. 1978) (one hour is too long a time gap). *But see United States v. Blakey*, 607 F.2d 779 (7th Cir.1979) (23 minutes is acceptable). The burden is on the person who claims the benefit of this ... exception to show entitlement to it. *See United States v. Cain*, 587 F.2d 678 (5th Cir.), *cert. denied*, 440 U.S. 975 [99 S.Ct. 1543, 59 L.Ed.2d 793] (1979).

S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 356 (1981) [hereinafter cited as Saltzburg].

Mil.R.Evid. 803(2)—*"Excited utterance"*—more closely compares to the Manual's "spontaneous exclamation" exception. This exception excludes from the hearsay rule of inadmissibility "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." While this provision is more liberal than Mil.R.Evid. 803(1) as to the period of time within which the utterance can be made and still come under the exception, nonetheless, as in the case of paragraph 142*b*, Manual, *supra*, the utterance must have been made while the declarant was in the prescribed emotional state. This requirement is vital to the trustworthiness of the evidence admitted under this exception, for "statements made ... while under the stress of excitement" are deemed to "possess inherent reliability. The excitement and associated spontaneity remove an opportunity for calculation." Saltzburg, *supra* at 356. On the present record, I am not satisfied that appellant carried his burden of showing that five days after his wife's death he was still in such a state of excitement and stress as to make his utterance trustworthy.

### B

In pertinent part, paragraph 142*d*, Manual, *supra*, provided:

If a statement made under circumstances not indicative of insincerity discloses a relevant and *then existing motive, intent,* or state of mind or body of the person who made the statement, evidence of the statement is admissible for the purpose of proving the motive, intent, or state of mind or body so disclosed.

. . . . .

Subject to the limitations pertaining to the admissibility of confessions or admissions (see 140*a* ), evidence of statements of the accused tending to show a consciousness of guilt is admissible. Evidence of statements of the accused, not made under circumstances indicative of insincerity, tending to show a consciousness of innocence is also admissible, and this is so whether the statement was made before, during, or after the alleged offense.

(Emphasis added).

At first glance it might appear that the "consciousness of innocence" provision in paragraph 142*d* would permit the reception of appellant's statement to Sergeant Mack. His remark certainly reflects a "consciousness of innocence," and the Manual provision expressly includes a statement made after the alleged offense. Moreover, unlike the majority, I can find no evidence in the record which would support the conclusion now imputed to the military judge that appellant's utterance to Sergeant Mack was "made under circumstances indicative of insincerity."

However, a fair reading of paragraph 142 *d* in its entirety implies that the "consciousness of innocence" to which the provision addresses itself is the declarant's consciousness contemporaneous with the alleged offense—not after some significant interval of time. Indeed, the opening sentence of the paragraph allows admissibility of a statement disclosing a *"then existing* motive, intent, or state of mind or body" (emphasis added)—not a statement about what the declarant recalls was his "motive, intent, or state of mind or body" at some substantially earlier time. This interpretation of the exception is reinforced by subsequent discussion in paragraph 142*d* that "[e]vidence of a person's statement as to his memory or belief of a fact, offered as tend-

ing to prove the fact remembered or believed, is not admissible under the rule pertaining to evidence of statements of motive, intent, or state of mind or body." Any less restrictive interpretation which would permit an accused, long after the event, to utter a self-serving statement reflecting innocence of motive or intent at the time of the event would undermine the rationale which underpins all the exceptions to the hearsay rule—namely, trustworthiness. *See generally Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *United States v. Johnson,* 3 M.J. 143 (C.M.A.1977).

In their discussion of Mil.R.Evid. 803(3)— *"Then existing mental, emotional, or physical condition"* (a rule which the drafters of the Rules believed was "similar to" paragraph 142*d* of the Manual, *see* drafter's *Analysis,* 8 M.J. CCVII)—the authors of the *Military Rules of Evidence Manual* took the same view. They commented:

> The Rule generally does not permit evidence of present memory or belief to prove the existence of a past condition or fact. The Rule thus follows the Supreme Court's traditional distinction between statements of present status (including forward-looking statements—*see Mutual Life Insurance Co. v. Hillmon,* 145 U.S. 285 [12 S.Ct. 909, 36 L.Ed. 706] (1892)— which do not present memory problems) and backwards-looking statements which do. *See Shepard v. United States,* 290 U.S. 96 [54 S.Ct. 22, 78 L.Ed. 196] (1933).

The distinction is illustrated with this example:

> Assume the declarant said, "I'm going to miss tomorrow's morning formation," and he subsequently failed to appear. This statement may be introduced against the declarant to show his intention to be away. However, if the declarant stated, "I missed yesterday's formation," that statement is inadmissible under exception (3) to show that he was not present. A

memory problem arises with the second statement.

. . . . .

The same logic applies to statements of existing physical conditions. The declarant's protestation, "my arm hurts" falls within the exception, while his statement, "my arm hurt yesterday" is excluded when both are offered for their truth. Saltzburg, *supra* at 357.

Accordingly, appellant's statement to Sergeant Mack that his wife's death five days before had been an accident reflects no more than his recollection of the intent he had possessed five days earlier. As such, it is not admissible to show his "consciousness of innocence" under the circumstances of this case.

### C

After concluding that appellant's remark was inadmissible under any of the recognized hearsay exceptions, the principal opinion then discusses whether the holdings in *Chambers v. Mississippi* and *United States v. Johnson,* both *supra,* required reception of this evidence. To be sure, sometimes evidence which does not fall within a prescribed hearsay exception must be admitted because the circumstances "assure reliability and thereby compensate for the absence of the oath and opportunity for cross-examination." *Chambers v. Mississippi, supra* 410 U.S. at 299, 93 S.Ct. at 1047, quoted in *United States v. Johnson, supra* at 147. However, at no time during appellant's trial did his counsel suggest that the statement of Sergeant Mack should be admitted as highly reliable and trustworthy evidence pertinent to a material issue, even though it did not fit a recognized hearsay exception.[4] Moreover, as is apparent from my earlier discussion, no such claim could legitimately be made in the present case. *See generally* Mil.R.Evid. 803(24) and the drafters' *Analysis* at 8 M.J. CCX–CCXI; Saltzburg, *supra* at 366.

---

**4.** Neither did defense counsel at any time claim that appellant's out-of-court statement was not hearsay at all because it was offered as a prior consistent statement to rebut a charge of recent fabrication. *See* Mil.R.Evid. 801(d)(1)(B). Indeed, no such charge was made concerning appellant's trial testimony.

## II

I am less persuaded than is Judge Fletcher that the evidence of record failed to raise the possibility that the death of appellant's wife resulted only from his performing a lawful act in a lawful manner. Ferguson testified that he intended merely to scare his wife and to stop her attacks on him long enough to discuss their problems, but that he never intended to use the shotgun as a weapon. Although acknowledging that the accused "testified that everything that night was happening pretty fast," 15 M.J. 12, 19, the principal opinion declines to infer from this statement any excuse for appellant's failure to check the safety on the shotgun. On the other hand, I conclude that the members might have drawn such an inference, so I believe that the issue of accident probably was raised by the evidence.

However, even if appellant was entitled to an instruction on accident and even if this was not fairly included in the instructions to the members, appellant was not prejudiced by the omission. By finding appellant guilty of an intentional homicide, the members necessarily concluded affirmatively that appellant "intend[ed] to kill or inflict great bodily harm." *See* Article 118(2), Uniform Code of Military Justice, 10 U.S.C. § 918(2). Under such circumstances, it is far more difficult to infer prejudice from the judge's failure to give an accident instruction than would be the case if appellant had been convicted of an unintentional homicide, such as involuntary manslaughter or negligent homicide. *See* my separate opinion in *United States v. Thomas,* 11 M.J. 315, 318 (C.M.A.1981). Where the findings reflect a failure to find intent, the risk is greater that the members did not properly focus on the possibility of accident than is present when the trier of fact has found such intent to exist.

COOK, Judge (concurring in part and concurring in the result):

With respect to the first granted issue, I agree with Judge Fletcher that the military judge acted within his discretion in excluding evidence of appellant's statement to Master Sergeant Mack.

With respect to the second granted issue, I agree with Chief Judge Everett that appellant should have been granted an instruction on accident, but that under the circumstances he was not prejudiced by the omission.